UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 14-CV-24387- KMM

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and STATE FARM FIRE & CASUALTY COMPANY,

Plaintiff,

v.

B&A DIAGNOSTIC, INC. n/k/a OASIS MEDICAL CENTER CORP., ESTEBAN GENAO, ALEX ALONSO, M.D., ERNESTO ALVAREZ VELASCO and JOSE ANGEL ORTIZ MAZA,

Defendants.
_________________________________________/

**DEFENDANT'S, B&A DIAGNOSTIC, INC. AMENDED MOTION TO DISMISS COMPLAINT**

**(Amended only as to scrivener's error of Defendant's name)**

Defendant, B&A DIAGNOSTIC, INC. n/k/a OASIS MEDICAL CENTER CORP., ("B&A"), hereby moves this Court for entry of an Order granting a dismissal of any and all pertinent claims contained in the Complaint filed by Plaintiff, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and STATE FARM FIRE & CASUALTY COMPANY'S ("State Farm"), pursuant to Fed. R. Civ. P. Rule 12(b) or in the alternative, Rule 12(e) and in support thereof, states as follows:

## I.        INTRODUCTION

I .

In order for this court to grant any relief to a plaintiff, said plaintiff must first properly claim the relief sought in a complaint. The Federal Rules of Civil Procedure, specifically rule 12(b)(6) dictates that a court may dismiss an action, when a plaintiff has failed to properly plead or state  the claim upon which relief can be granted, within their complaint. Deficiencies in a complaint may vary as to why or how they fail to state a claim upon which relief can be granted. The deficiencies in the instant complaint, in regards to allegations specifically against B&A are numerous and support a dismissal of State Farm's claim. First, and foremost, State Farm's claim to recover monies based upon a theory of unjust enrichment against B&A DIAGNOSITIC, INC., n/k/a OASIS MEDICAL CENTER CORP. (referred to as "B&A") are wholly unfounded and without legal merit. Second, a multitude of claims contained in paragraph 1 of State Farm's complaint and referenced to in State Farm's  exhibits to said complaint are barred by the Res Judicata Doctrine. Third, should the court determine that any claims survive the aforementioned reasoning for

casualty insurers with their principal place of business in Bloomington, Illinois and are licensed to engage in business within the State of Florida as foreign corporations.

Defendant, B&A Diagnostic, Inc. n/k/a Oasis Medical Center, Corp. (hereinafter referred to as "B&A") is a Florida corporation with its principal place of business in Miami, Florida. B&A operated as a health care clinic licensed by Florida's Agency for Health Care Administration ("ACHA"), and thus was required to employ a Medical Director.  Defendant, Esteban Genao (formerly Esteban Genao, M.D. hereinafter referred to as "Genao") served as the medical director for B&A from March 21, 2008 through March 31, 2010.  As of the date of this filing, Defendant, Alex Alonso, M.D. (hereinafter referred to as "Alonso") whom is independently represented in this matter, presently serves as the medical director of B&A and has done so since April 1, 2010.  Defendant, Ernesto Alvarez Velasco (hereinafter referred to as "Velasco") was employed by B&A to perform various tasks, including  x-ray services on patients. Velasco was employed at B&A from approximately June or July of 2009 through June or July of 2012.  Defendants, Jose Angel Ortiz Maza ("Ortiz") was employed by B&A to perform various tasks including perform including x-ray services on patients.  Ortiz was employed by B&A approximately from July 2007 through approximately 2013. Defendants, Genao, Alonso, Velasco and Ortiz are citizens and currently reside in the State of Florida.

On November 19, 2014, State Farm filed its 32 page Complaint seeking an award of damages positing the allegation that Defendants, B&A, Genao, Alonso, Velasco and Ortiz have been unjustly enriched.  State Farm is also seeking a declaratory judgment on the status of insurance claims set forth in several of the 17 exhibits attached to its Complaint, marked as Exhibits "A" through "Q."  State Farm's allegations stem from the contention that Defendant, B&A submitted to State Farm, non-compensable

medical bills for allegedly "unlawful services" as Defendants, B&A, Genao, Alonso, Velasco and Ortiz were ostensibly not in compliance with various licensing, administrative or statutory requirements.

State Farm's Complaint is entirely comprised of baseless, conclusory, precluded, untimely and fictitious allegations. Defendants B&A, Genao, Velasco and Ortiz assert that State Farm's Complaint fails in its entirety and should be dismissed as State Farm has failed to raise *any* viable and/or cognizable cause of action against *any* of the Defendants. This Motion to Dismiss will examine various reasons to support B&A assertions, including the doctrine of *res judicata*, failure to state a cause of action for unjust enrichment, the statute of limitations, State Farm's lack of standing and the Court's lack of subject matter jurisdiction.

## II. LACK OF SUBJECT MATTER JURISDICTION DUE TO THE LEGISLATURE NOT CREATING A PRIVATE RIGHT OF ACTION IN FLA. STAT. §400.990-§400.995

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a party may bring either a facial or a factual challenge to a court's subject matter jurisdiction. *Lawrence v. Dunbar,* 919 F.2d 1525, 1528-29 (11th Cir.1990). ). In a facial challenge, a court assumes all of the plaintiff's allegations are true and determines whether a plaintiff has alleged a sufficient basis for subject matter jurisdiction. *Id*. at 1529. In a factual challenge, a court must determine if it has the power to hear the case. *Id*. A court is free to weigh the evidence and evaluate the merits of the jurisdictional claims set forth. *Id* . In the instant claim, as there is no private right of enforcement in the relevant statutes provided to an insurer, State Farm's claims must be dismissed.

State Farm's instant action contains 4,678 claims, yet solely bases its request for relief on two counts. First, State Farm alleges it is entitled to recovery of paid monies based upon a theory of

unjust enrichment, followed by a declaratory action to cease any further payments to B&A for the relevant claims. Both claims for relief, circulate around the greater, albeit unsubstantiated allegations that B&A, and the employees named in State Farm's Complaint, have violated provisions of The Health Care Clinic Act (the "HCCA"), and thus provided unlawful services to State Farm's insureds. The HCCA was enacted to regulate health care clinics and provide for the licensure, establishment and enforcement of basic standards and to provide administrative oversight by the Agency for Healthcare Administration. Fla. Stat. §400.990 (2008). The HCCA requires a clinic to obtain a license from the Agency for Health Care Administration ("ACHA"). §400.991 Fla Stat. The HCCA further requires a clinic, owned by a layperson, to designate a Medical Director, whose duties are delineated within §400.9935, Fla. Stat.

Section §400.993 enumerates the penalties for operating an unlicensed clinic and incorporates Section §408.812. Section 408.812, entitled "Unlicensed Activity" provides in pertinent part:

> (2) The operation or maintenance of an unlicensed provider or the performance of any services that require licensure without proper licensure is a violation of this part and authorizing statutes. Unlicensed activity constitutes harm that materially affects the health, safety, and welfare of clients. The agency or any state attorney may, in addition to other remedies provided in this part, bring an action for an injunction to restrain such violation, or to enjoin the future operation or maintenance of the unlicensed provider or the performance of any services in violation of this part and authorizing statutes, until compliance with this part, authorizing statutes, and agency rules has been demonstrated to the satisfaction of the agency.
>
> (3) It is unlawful for any person or entity to own, operate, or maintain an unlicensed provider. If after receiving notification from the agency, such person or entity fails to cease operation and apply for a license under this part and authorizing statutes, the person or entity shall be subject to penalties as prescribed by authorizing statutes and applicable rules. Each day of continued operation is a separate offense.
>
> (4) Any person or entity that fails to cease operation after agency notification may be fined $1,000 for each day of noncompliance.

Fla. Stat. §408.812 (2008).

The HCCA provides for penalties for any violations of the Act. Fla. Stat. §400.995(1) (2008). The HCCA provides that the agency can impose administrative fines of up to $5,000.00 per day for violations of the requirements of the HCCA. *Id*. Furthermore, the agency shall determine if a penalty will be imposed and will make such a determination based upon the factors enumerated at §400.995(1)(a)-(d). As an alternative to agency action, the agency has discretion to recommend corrective action or request a plan of corrective action. Fla. Stat. §400.995(6) (2008).

State Farm bases the foundation of its legal argument on the allegation that B&A violated Chapter §400.990. (C. ¶ 49-60). State Farm contends that B&A is not adequately complying with the requirements under the HCCA to sustain its license. Its B&A's contention that State Farm is attempting to surpass its rights as merely an insurer and thus does not have the power to adjudicate, regulate or enforce the aforementioned.

It appears that State Farm is intending to use the HCCA as a method to unilaterally determine a medical provider, here B&A's, compliance with agency rules and regulations as a defense to payment. As aforementioned both in the instant motion as well as in the complaint, the purpose of the HCCA is for [itself] "to provide for the licensure, establishment, and enforcement of basic standards for health care clinics and to provide administrative oversight by [ACHA]". §400.990(2), Fla. Stat. (C. ¶ 49). The stated purpose of the HCCA is **consumer** protection. *See* § 400.990, Fla. Stat.

Under State Farm's interpretation of the HCCA, within its complaint, insurers are allowed to challenge the ACHA'S licensure, establishment and enforcement of the standards set forth by the Agency. The stated legislative purpose behind the enactment of Chapter 400 is found at § 400.990(2)

which states, inter alia:

> The Legislature finds that the regulation of health care clinics must be strengthened to prevent significant cost and harm to consumers. The purpose of this part is to provide licensure, establishment, and enforcement of basic standards for health care clinics and to provide administrative oversight by the Agency for Health Care Administration.

To accept State Farm's proposition that it is entitled to challenge B&A's, and its employees compliance with regulatory provisions would result in a private cause of action vesting in every patient, PIP insurer, HMO, PPO, and managed care organization. Consequently, following State Farm's argument, all entities would be entitled to challenge the "lawfulness" of a health care provider's bills solely by identifying a purported violation of the rules promulgated by the HCCA and AHCA. At no point does Chapter 400, or any part of the PIP statute, indicate that the Legislature intended for this type of widespread private cause of action. In cases of evaluating statutory construction, the Court's purpose is to effectuate legislative intent. *Polite v. State*, 973 So.2d 1107, 1111 (Fla. 2007). "Legislative intent is the polestar that guides a court's statutory construction analysis." *Id*. (quoting *State v. J.M*., 824 So. 2d 105, 109 (Fla. 2003).

State Farm's proposition to this court that it retains a private cause of action or right of enforcement under Chapter 400, is not supported in law. Specifically, Judge Jordan of the Ninth Judicial Circuit held that "[t]here is no private right of enforcement by insurance carriers under F.S. §400.900." In another case where Peachtree made a similar contention against another medical facility, Judge Sanders of the Seventh Judicial Circuit held that "[t]he Florida Supreme Court's decision in *Murthy v. N. Sinha Corp*., 644 So. 2d 983 (1994), bars Peachtree's challenge to the ownership of the medical facility or the compliance with the requirements found in the Health Care Clinic

Act." Additionally, Judge Pope Hamrick of the Seventh Judicial Circuit and Judge Heather Higbee of the Ninth Judicial Circuit have arrived at the same conclusion on this legal issue. As herein argued by B&A and previously held by the Honorable Judge Jordan, Judge Higbee, Judge Sanders and Judge Hamrick, the HCCA does not create a private cause of action or right of enforcement. Florida courts have applied one of two tests to determine if a statute allows a private right of enforcement: (1) the "class benefitted" test and, (2) the "legislative intent/*Cort*" test. State Farm has no right to enforce or challenge licensed medical facility's, here B&A's, compliance with Chapter 400 under either test.

Chronologically, the first test Florida courts exercised to test for private enforcement is the "class benefitted" test. Under the "benefitted test" a court may imply a private right of enforcement if the statute at issue imposes a duty to benefit a class of individuals, and a class member was injured by a breach of that duty. *Rosenberg v. Ryder Leasing, Inc.* 168 So. 2d 678 (Fla. 3d DCA 1964). The instant case fails to meet said criteria as the HCCA does not confer any benefits on insurance carriers. The benefit, as intended by HCCA and depicted within its very own language is to benefit consumers, with a regulation of health care clinics. In its own explanation of the purpose of the HCCA, the Legislature never mentions any intent to confer a benefit to insurance carriers. Rather the Legislature states the regulation of the health care clinics must be strengthened to prevent significant cost and harm to consumers." §400.990(2). There can be no question that the statute (and the no-fault act as a whole) is intended to benefit the public and the state as a whole. *Lasky v. State Farm Ins. Co.* 296 So. 2d 9, 16 (Fla. 1974). Chapter 400 contains no indication whatsoever of any intent to benefit insurance carriers.

More recently, the Florida Supreme Court narrowed the test for a private right of enforcement. "Today. . .most courts generally look to the legislative intent of a statute to determine whether a private cause of action should be judicially inferred." *Murthy v. N. Sinha Corp.* 644 So.2d 983, 985

(Fla.l994). This new, more narrow approach is based on the United States Supreme Court's decision in *Cort v. Ash*, 422 U.S. 66 (1975) . *See generally Fischer v. Metcalf*, 543 So.2d 785, 788 (Fla. 3d DCA 1989). *Cort* set forth the following criteria for determining whether a statute creates an implied private right of action: (1) whether the plaintiff is one of the class for whose special benefit the statute was enacted; (2) whether there is any indication, either explicit or implicit, of a legislative intent to create or deny such a remedy; and (3) whether judicial implication is consistent with the underlying purposes of the legislative scheme. *See* 422 U.S. at 78; *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran* 456 U.S. 353, 377 (1982) (explaining the reasoning behind the narrower test).

In *Murthy,* after applying the narrower test, the Florida Supreme Court held that there could be no private enforcement of a statute that required a corporation's qualifying agent to supervise the corporation's construction projects. Significantly, the court agreed with the plaintiff in *Murthy* that the statute, which was both regulatory and penal in nature, did create a legal duty on the part of the qualifying agent. However, the court in fact rejected the "class benefitted" test as being overbroad. In its analysis of the new test, the court stated: "legislative intent, rather than the duty to benefit a class of individuals, should be the primary factor considered by a court in determining whether a cause of action exists when a statute does not expressly provide for one." *Id*. at 985; *see also Freehauf v. School Bd*. 623 So. 2d 761, 763 (Fla. 5th DCA 1993); *Finkle v. Mayerchak* 578 So.2d 396 (Fla. 3d DCA 1991); *Fischer v. Metcalf,* 543 So .2d 785, 788 (Fla. 3d DCA 1989) (en banc).

Similar to the legislature's intent in drafting the provisions currently at issue of the HCCA, and ACHA, as a way to protect the consumer, the legislature described the statute at issue in the *Murthy* case as one relating to the protection of the public. In the statute discussed in *Murthy*, the legislature recited that that work improperly performed by incompetent or dishonest contractors "may pose a

danger of significant harm to the public," and "that it is necessary in the interest of the public health, safety and welfare to regulate the construction industry." 644 So.2d at 986 (quoting § 489.101, Fla. Stat.). The Supreme Court held that, "[in] general, a statute that does not purport to establish civil liability but merely makes provision to secure the safety or welfare of the public as an entity, will not be construed as establishing a civil liability." *Id*. (quoting *Moyant v. Beattie*, 561 So.2d 1319, 1320 (Fla.4th DCA 1990)). The court also went further and noted that the legislative history of the statute did not express intent to create any private right of enforcement. *Id*. Finally, the court emphasized that another provision of the same chapter had previously authorized private suits in a different context. *Id*.

Like the statute at issue in *Murthy*, the HCCA does not expressly state any intent to create a private right of enforcement, contrary to State Farm's unfounded assumptions. Likewise, there is no indication in the legislative history that a private right of enforcement was ever even intended. Rather, the ACHA is the entity that generally regulates medical care providers, and grants clinics licensure at the request for a layperson owner. At §627.736(12), the Legislature has expressly provided for an insurance carrier's challenge to the "lawfulness" of an insured's medical bills. Where the Legislature has provided an express private right of action in one part of an Act, but not in another, courts should be even more cautious in implying a right of action in the silent part. *Montes de Oca v. Orkin Exterminating Co*. 692 So. 2d 257 (Fla. 3d DCA 1997).

The fact that the Legislature had previously provided a right of enforcement in another part of the same statute was significant to the Florida Supreme Court in rejecting an implied right of enforcement in *Murthy*. *See* 644 So. 2d at 986. Likewise, in *Mostoufi v. Presto Food Stores, Inc*., 618 So. 2d 1372 (Fla. 2d DCA 1993), the Second District rejected an implied private right of action, noting that, "it is significant that the Act contains a section specifically addressed to private rights of action. . .

Congress having thus specifically addressed the subject of private remedies, it is reasonable to assume that it said all that it intended on that subject." Naturally the same analysis applies here, as the Legislature is obviously capable of providing an express right of private enforcement in the HCCA, and has not done so. Thus, all the factors which led the Supreme Court to reject a private right of action in *Murthy* are equally present here, and as such B&A argues that result should therefore be the same.

It goes without much further analysis that the Legislature was free to provide an express right of private enforcement in HCCA. However, when a court is asked to judicially infer a private enforcement right, the court must act cautiously. *See Kaplan v. Peterson*, 674 So. 2d 201 (Fla. 5th DCA 1996) ("[C]ourts are reluctant to read into a statute a new private cause of action not expressly provided for by the Legislature...."); *see also Goff v. Ehrlich*, 776 So. 2d 1011 (Fla. 5th DCA 2001); *St. John Med. Plans, Inc. v. Gutman*, 721 So. 2d 717 (Fla. 1998); *Bass v. Morgan, Lewis & Bockius*, 516 So.2d 1011 (Fla. 3d DCA 1987); *Lavis Plumbing Servs. v. Johnson,* 515 So. 2d 296 (Fla. 3d DCA 1987).

It is clear that the legislature did not confer a private right of action or a private right of adjudication in State Farm for the allegations contained in the Complaint. If State Farm believes that B&A, or any of its employees were performing services in a manner that violated Chapter 400, then its sole recourse is to report its suspicions to the Agency for ACHA. The remedy is not for State Farm to supersede statutory limitations, in order to become a pseudo agent of the Department of Health or Agency for Healthcare Administration and seek adjudications outside of the parameters set forth in the controlling statutes. As such B&A requests this court dismiss the allegations against him contained in the instant action as they are all premised on allegations of violations of Chapter 400, §817.234, and §627.736 wherein the legislature has not created or intended any private right of enforcement for insurers like State Farm.

## III. DECLARATORY JUDGMENT ACTION SHOULD BE DISMISSED OR PLAINTIFF MUST REPLEAD PURSUANT TO FED. R. CIV. PRO. 12(e)

### a. Legal Standard

State Farm's entire complaint is premised on two counts for relief, namely unjust enrichment and a declaratory judgment. State Farm's declaratory relief relies on Florida Statute Chapter 86. The Court in *Wolf Sanitary Wiping Cloth, Inc. v. Wolf,* 526 So.2d 702 (Fla. 3d DCA 1988) explained that under Florida law a declaratory judgment action is improper when the Court is asked to determine factual questions. In analyzing the validity of a declaratory judgment action under Chapter 86, the Court stated:

> [A] declaratory judgment action will not lie when judicial determinations involve factual questions and issues and not contract interpretations or construction. Applying the rule to the facts of this case, it is clear that no question exists concerning title, ownership, possession, or rights attendant to the stock .... The use of declaratory proceedings is not available where the object is to try disputed questions of fact as the determinative issue rather than to seek a construction of definite stated rights, status, or other relations. *Smith v. Milwaukee Ins. Co.*, 197 So.2d 548 (Fla. 4th DCA), cert. dismissed, 204 So.2d 332 (Fla. 1967).

526 So.2d at 704-705. Notwithstanding State Farm's identification of Chapter 86 as the procedural vehicle for its requests for declaratory relief, federal law determines whether a federal court can and may properly render a declaratory judgment. *See Cincinnati Ins. Co. v. Holbrook*, 867 F.2d 1330, 1332-33 (11th Cir. 1989), abrogated on other grounds by *Wilton v. Seven Falls Co.*, 515 U.S. 277, 115 S.Ct. 2137, 132 L. Ed. 2d 214 (1995). State law determines the substantive rights and duties of the parties to an insurance contract, but the question of justiciability is a federal

issue to be determined only by federal law. *See Holbrook*, 867 F.2d at 1333.

The Supreme Court detailed the test for jurisdiction over declaratory judgment actions as follows: the dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests; and it must be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc*., 127 S.Ct. 764, 771 (2007)(internal citations omitted).

**b. Application to Facts**

State Farm seeks declaratory relief within Count II of its complaint. (C. ¶ 147-157). State Farm alleges that of the 4,678 individual claims set forth in the complaint, its declaratory relief is only aimed at the claims listed on Exhibits "E", "J", "N" and "P". (C. ¶ 148). State Farm asks this court to declare that "(a) State Farm is not obligated to pay any of the amounts set forth in Exhibits "E", "J", "N" and "P" to B&A," and to also declare "(b) State Farm is not obligated to pay claims that have or may be submitted for services provided by B&A with dates of service between March 21, 2008 through November 16,2011." (C. ¶157). State Farm is essentially requesting this Court determine its contractual and statutory rights and responsibilities to pay insurance benefits.

In order to make said declarations, State Farm is in effect asking this Court to make several factual determinations, as follows:

> Whether State Farm can properly look to circumstantial evidence to determine if a clinic has complied with Florida Statute §627.736 et. sec.
>
> Whether State Farm can properly look to circumstantial evidence to determine if a clinic has complied with Florida Statute §817.234(7)(a).
>
> Whether State Farm can properly look to circumstantial evidence to determine if a

clinic has complied with Florida Statute and §400.990 et. sec.

Whether B&A's Medical Director substantially failed to perform his statutorily mandated duties, pursuant to §627.736 and Chapter 400. (C. ¶ 150, 151, 154).

Whether a Medical Director's alleged failure to perform his statutorily mandated duties as Medical Director of the B&A renders the services/treatments provided by the B&A not compensable under Florida Statutes §400.9935 and §627.736. (C. ¶ 150 and 155).

Whether B&A or its Medical Directors violated §817.234(7)(a) by allegedly waiving or making no effort to collect the copayments or deductibles from patients. (C. ¶. 154).

Whether the a clinic, as B&A, licensed under HCCA and ACHA, failed to lawfully render services as required by Florida Statute §627.736(5)(b), by allegedly violating Florida Statute §817.234(7)(a).

The above cited inquires to this court, although not posed by State Farm outright, do in fact lie intertwined in the paragraphs supporting its claim for declaratory relief. (C. ¶ 147-157). The manner in which State Farm's declaratory judgment is posed, forces this court to assume State Farm's perspective of disputed facts and adjudicate allegations of past conduct. State Farm request for a declaratory judgment permitting State Farm to forgo any payments for claims contained exhibits "E", "J", "N" and "P", is based upon unsubstantiated hypothetical set of facts, and thus this Court should decline to consider State Farm's plea for a declaratory judgment. (C. ¶ 147-157). Consideration of this court of State Farm's declaratory relief would clearly be in contrast with the above-cited *MedImmune* case. In further support thereof, B&A argues that State Farm failed to attach any policies of insurance to its instant complaint for the 4,678 claims, and thus fails to advise this Court, and the various defendants, as to what portions of the absent policies warrant declaratory relief.

In *Great Lakes Reinsurance (UK) PLC v. TLU Ltd.*, 2008 WL 828122 (S.D. Fla. Mar. 27, 2008) the Court explained:

Plaintiff seeks a declaration that the policy it issued to Defendants is void because

> of material omissions by Defendants in its application, as well as a declaration that the type of damage that Defendants' vessel sustained would not be covered by the policy. In other words, Plaintiff asks this Court to make factual determinations about the materiality of information that Defendants did not include on its application as well as factual determinations regarding potential breaches of contract that Defendants are alleged to have committed in the past. Plaintiff does not seek a purely legal ruling, such as a request to resolve differences in the interpretation of specific language in the insurance contract .... Factual questions regarding whether a breach of contract has been committed in the past is unrelated to the purpose behind the Declaratory Judgment Act.

*Id*. at *2.

Similarly, the Court in *Watershed Treatment Programs, Inc. v. United Healthcare Insurance Company,* 20 Fla. L. Weekly Fed. D 705 (S.D. Fla. Apr. 10, 2007) explained:

> Even if jurisdiction over this count were found to exist, I would utilize my discretion to decline to decide the matter. The Declaratory Judgment Act provides that a court "may declare the rights and other legal relations of any interested party," 28 U.S.C. § 2201 (a), not that it must do so. This text has long been understood "to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Id*. at 776, citing *Wilton v. Seven Falls Co*., 515 U.S. 277, 286, 115 S. Ct. 2137, 132 L. Ed. 2d 214 (1995).
> The determination of *Plaintiffs licensure rights is best left to the state agencies that issued and administer the licenses*. I shall therefore dismiss Plaintiffs count for declaratory relief.

*Id*. at 18. (Emphasis added).

Ultimately, State Farm seeks an advisory opinion from this Court that the B&A and the named employees violated various provisions of Florida statutory law, including licensure statutes. B&A submits that the purpose of the Declaratory Judgment Act is not to authorize a Court to issue an advisory opinion regarding whether the defendants, including its employees, violated a state statute. Therefore, B&A requests that this Court dismiss State Farm's declaratory judgment action.

## IV. DISMISSAL BASED UPON THE DOCTRINE OF RES JUDICATA, THE DOCTRINE OF ROOKER-FELDMAN, AND THE COLORADO ABSTENTION DOCTRINE

Res Judicata: Applicable Background Information

In *State Farm Mut. Auto. Ins. Co. v. B&A Diagnostic, Inc. et al.*, 13-cv-24393-UU, State Farm sued B&A Diagnostic for damages based on the allegation that B&A Diagnostic, Inc. submitted auto insurance benefits claims for diagnostic services that were unlawfully rendered to obtain insurance payments from State Farm. In the original Complaint filed on December 6, 2013, State Farm Mutual Automobile Insurance Company named B&A Diagnostic, Inc. n/k/a Oasis Medical Center Corp. and Ernesto Alvarez Velasco as Defendants.

On March 28, 2014, State Farm filed its Motion for Leave to Amend its Complaint which added State Farm Fire & Casualty Company as a Plaintiff and Esteban Genao, M.D., Alex Alonso, M.D. and Jose Angel Ortiz Maza as additional Defendants. The Amended Complaint also contained additional factual allegations. On April 15, 2014, the Honorable Judge Ursula Ungaro entered an order on State Farm's Motion for Leave to Amend its Complaint. In said order, the Court found that State Farm did not show good cause for leave to name the additional parties as State Farm could have included the additional parties in its original complaint but did not. The Court did however, allow State Farm to include the additional factual allegations.

On April 18, 2014, Plaintiff, State Farm filed its Motion for Clarification and/or Reconsideration regarding the April 15, 2014 Court Order denying State Farm leave to amend to include the additional parties. On May 1, 2014, the Honorable Judge Ursula Ungaro entered an order on State Farm's Motion for Clarification and/or Reconsideration wherein the Court flat out denied said motion. The Court specified a second time that State Farm is not given leave to amend its Complaint to add any Plaintiffs

or Defendants. On May 5, 2014, State Farm filed its Amended Complaint which included Exhibits marked "A" through "L."

On October 6, 2014, State Farm and B&A Diagnostic, Inc. entered into a settlement agreement. On November 10, 2014, the Honorable Ursula Ungaro entered a Final Order of Dismissal With Prejudice in the matter of *State Farm Mut. Auto. Ins. Co. v. B&A Diagnostic, Inc.* 13-cv-24393-UU Please see Final Order of Dismissal with Prejudice attached as EXHIBIT A. Nine days after the Court entered the Final Order of Dismissal with Prejudice in the pertinent prior federal case, State Farm filed its Complaint in the instant case.

**a. Standard of Law**

Res Judicata: Applicable Motion to Dismiss Standard of Law

It is well established that a court's review on a motion to dismiss is "limited to the four corners of the complaint." *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002). In deciding a motion to dismiss, a court may consider only the complaint itself and any documents referred to in the complaint which are *central to the claims* [emphasis added]. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). When ruling on a motion to dismiss, a district court may only consider an extrinsic document if it is (1) central to the Plaintiff's claim; and (2) its authority is not challenged. *SFM Holdings, Ltd. V. Banc of Am. Sec., LLC*, 600 F. 3d 1334, 1337 (11th Cir. 2010).

In the instant case, State Farm incontestably refers to the pertinent prior federal case in numbered paragraphs 114 and 117 of State Farm's Complaint. Additionally, exhibits "A," "C," "F," "G," "H," and "Q" of State Farm's Complaint are identical to exhibits that were filed with the Amended Complaint in the pertinent prior federal case. Further, exhibits "K" and "L" are transcript excerpts of depositions that

were carried out in *State Farm Mut. Auto. Ins. Co. v. B&A Diagnostic, Inc.* 13-cv-24393-UU, the pertinent prior federal case. Said depositions are of two of the named Defendants in the instant case.

As noted, the four corners of State Farm's Complaint reference the pertinent prior federal case on multiple occasions and unequivocally demonstrate that the subject matter from the prior federal case is intrinsic and central to State Farm's Complaint in the current case.

Res Judicata: Standard of Law

The Florida Supreme Court has held that under the doctrine of *res judicata*, judgment rendered by a court of competent jurisdiction on the merits is a bar to any further suit between the same parties and/or their privies involving the same cause of action or subject matter. *McGregor v. Provident Trust Co. of Philidelphia*, 119 Fla. 718 (Fla. 1935). The Florida Supreme Court has also held that "the determining factor in deciding whether the cause of action is the same is whether the facts or evidence necessary to maintain the suit are the same in both actions." *Albrecht v. State of Florida*, 444 So.2d 12 (Fla. 1984).

State Farm's references to *State Farm Mut. Auto. Ins. Co. v. B&A Diagnostic, Inc. et al.* as well as various of the exhibits attached to its Complaint raise, on the face of the complaint, the defense of *res judicata*. "[A] party may raise a *res judicata* defense by motion rather than by answer where the defense's existence can be judged on the face of the complaint." *Concordia v. Benkekovic*, 693 F.2d 1073, 1075 (11th Cir. 1982). Under Florida law, *res judicata* bars the relitigation of a prior action when there is (1) identity of the thing sued for, (2) identity of the cause of action, (3) identity of the persons and parties to the action, and (4) identity of the quality or capacity of the person for or against whom the

claim is made. *Tbc ! !T !K !S ! b !Nb b !E d*, 200 F.3d 1356, 1360 (11th Cir. 2000).

Prior and present cau[illegible]ction are con[illegible]e same under Florida law when they share a "similarity of facts essential to both actions." *Id.*; see *Kizzire v. Baptist Health System, Inc.*, 441 F.3d at 1309 (where the court upheld dismissal of a present federal claim regarding the reasonableness of medical bills on *res judicata* grounds, because of the prior entry of state court collection judgments). *Res judicata* bars not only causes of action actually raised in the prior action, but also claims and defenses that *could have been raised* [emphasis added]. See *Zikofsky v. Marketing 10, Inc.*, 904 So.2d 520, 523 (Fla. 4th DCA 2005).

**b. Res Judicata Application to Facts**

Here, the elements necessary to preclude State Farm from re-litigating its claim are present. There is identity of the thing sued for in monetary damages regarding the medical bills; identity of the persons and parties to the action; and identity of the quality or capacity of the person for or against whom the claim is made. There is also identity of the causes of action, as this case and the prior federal case indisputably share a similarity of facts, that is, the circumstances regarding B&A's medical bills as well as the allegations that Esteban Genao, Alex Alonso, M.D., Ernesto Alvarez Velasco and Jose Angel Ortiz Maza failed to perform any statutory duties. State Farm has asserted the *same* legal theories in the current case as it did in *State Farm Mut. Auto. Ins. Co. v. B&A Diagnostic, Inc. et al.* by which to seek damages, interest and costs that could have and should have been included as part of its prior federal lawsuit.

The complaints filed by State Farm in each matter are nearly *word-for-word identical* to each other.  State Farm initiated litigation in *State Farm Mut. Auto. Ins. Co. v. B&A Diagnostic, Inc. et al.* in December of 2013 and was aware of every issue and allegation now brought before this Honorable Court in the instant case which was either directly litigated or could have been litigated in that prior federal lawsuit. Further, the Court within that lawsuit ruled that State Farm could have added State Farm Fire & Casualty Company as a Plaintiff as well as Esteban Genao, M.D., Alex Alonso, M.D. and Jose Angel Ortiz Maza as additional Defendants in State Farm's *original* complaint; However, because State Farm *did not include* said parties in their original complaint - when they were *fully aware* of all justiciable issues regarding said parties - the Court in that lawsuit did not allow them to add said parties in State Farm's Amended Complaint.

The references to and exhibits from *State Farm Mut. Auto. Ins. Co. v. B&A Diagnostic, Inc. et al.*- the prior federal case - clearly demonstrate within the four corners of State Farm's Complaint that the current lawsuit and the prior federal lawsuit contain the same causes of action and/or subject matter and that the facts or evidence necessary to maintain the current lawsuit are the *same in both actions*.  The procedural posture of the prior federal case indicates that even though one Federal Court Judge has already *denied* State Farm's attempt to add State Farm Fire & Casualty Company as a Plaintiff and Esteban Genao, M.D., Alex Alonso, M.D. and Jose Angel Ortiz Maza as additional Defendants, State Farm is now attempting to do so *again* in the instant case.  As noted above, the four corners of State Farm's Complaint demonstrate that the "same evidence substantially supports both suits." *Kizzire*, 441 F.3d at 1309.

Having implicated federal judicial proceedings, this Honorable Court may properly take judicial notice of the filings in those proceedings when considering Defendant's Motion to Dismiss. "The Eleventh Circuit has held that, when considering a 12(b)(6) motion to dismiss, a court may take judicial notice of the public record, without converting the motion to one for summary judgment, because such documents are capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." *Williams v. Edelman*, 408 F. Supp. 2d 1261, 1264 (S.D. Fla. 2005). The prior federal case, *State Farm Mut. Auto. Ins. Co. v. B&A Diagnostic, Inc. et al.,* as referenced within the four corners of State Farm's Complaint is most certainly public record that is capable of judicial notice in accordance with the ruling of the Eleventh Circuit.

**c. Dismissal pursuant to the *Rooker-Feldman* Doctrine**

In addition to the previously plead argument of *Res Judicata*, B&A also argues that this court lacks jurisdiction under the *Rooker-Feldman* doctrine. Pursuant to the *Rooker-Feldman* doctrine a federal court lacks jurisdiction to review claims that are "inextricably intertwined" with state court judgments. Here, State Farm filed a complaint that includes various exhibits, listing no less than 4,678 individual claims, each with its own separate and distinct procedural posture, stage of maturity and litigation.

The *Rooker-Feldman* doctrine finds its origin in two decisions from the United States Supreme Court, creating this doctrine's namesake: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303 (1983). In the case of *Goodman v. Sipos*, 259 F.3d 1327, 1332 (11TH Cir. 2001), the Eleventh Circuit has discussed the doctrine as follows:

> The *Rooker-Feldman* doctrine provides that federal courts, other than the United States Supreme Court, have no authority to review the final judgments of state courts. The doctrine extends not only to constitutional claims presented or adjudicated by a state court but also to claims that are "inextricably intertwined" with a state court judgment. A federal claim is inextricably intertwined with a state court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.
> *Goodman v. Sipos*, 259 F.3d 1327, 1332 (11TH Cir. 2001)

In the aforementioned case, the Eleventh Circuit has set forth four elements that must be met for the *Rooker-Feldman* doctrine to apply, they are as follows:

> (1)The party in federal court is the same as the party in state court, see *Roe v. Alabama*, 43 F.3d 574, 580 (11TH Cir. 1995); (2) the prior state court ruling was final or conclusive judgment on the merits, see *David Vincent, Inc. v. Broward County*, 200 F.3d 1325, 1332 (11TH Cir. 2000); (3) the party seeking relief in federal court had a reasonable opportunity to raise its federal claims in the state court proceeding, see *Dale v. Moore*, 121 F. 3d 624, 626 (11TH Cir. 1997)(per curiam); and (4) the issue before the court was adjudicated by the state court or was inextricably intertwined with the state court's judgment, see *Goodman v. Sipos*, 259 F.3d 1327, 1332 (11TH Cir. 2001).

*Amos v. Glynn County Board of Tax Assessors*, 347 F.3d 1249, 1265 n. 11 (11th Cir. 2003)

B&A's reliance on the *Res Judicata* doctrine, applies mostly to the claims brought forth in this instant action that were previously adjudged in the aforementioned settled case between these same parties adjudicated by this United States District for the Southern District of Florida, Case No. 13-cv-24393-UU. B&A makes this supplemental argument for dismissal of State Farm's complaint under the *Rooker-Feldman* doctrine regarding any pending and concluded claims previously brought forth by B&A in any Florida court including Miami-Dade, and Broward County courts[1]. Should any of the

[1] The claims for which Defendant seeks dismissal pursuant to the Rooker-Feldman Doctrine are for any of State Farm's 4,678 claims that were not or should have been included in the settlement between the parties procured from

claims that comprise the 4,678 individual claims for which State Farm seeks relief in its complaint fall under said categories, this court should agree that those claims fall outside of the its jurisdiction, and thus dismiss State Farm's action.

Due to State Farm's vague allegations contained in its complaint and referenced exhibits, B&A is unable to correctly distinguish which of the 4,678 claims would actually be barred by the *Rooker-Feldman* doctrine. In its complaint, State Farm merely provided exhibits listing a claim number, and whether or not the claim was paid by State Farm for each of the 4,678 claims. State Farm does not put B&A, nor any other defendant, on actual notice as to the status of any of those claims, whether they are currently being litigated in other courts, or whether B&A has yet to file suit for any of those claims, if the payments allegedly made were paid post suit, and so forth. Due to the lack of pertinent and vital information within State Farm's allegations, B&A is precluded from properly and specifically providing this court a clear defense and application of both the *Res Judicata* and *Rooker-Feldman* doctrines and their respective tests. Should this court not be inclined to dismiss State Farm's claims out-right based on the argument that State Farm is barred by the Res Judicata doctrine as well as this court's lack of jurisdiction on various claims pursuant to *Rooker-Feldman*, it should find that at the very least ordering State Farm to provide a more definite statement is imperative and crucial for B&A to properly defend this claim.

**d. Alternatively This Court Should Stay This Action Pursuant To Colorado River Abstention Doctrine**

As aforementioned, State Farm's instant claim includes no less than 4,678 individual claims, without differentiating or identifying which of said claims have been filed in state court for recovery of

aforementioned Case No. 13-cv-24393-UU.

PIP benefits. In *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236 (1976), the United States Supreme Court addressed when a federal court should abstain from exercising jurisdiction in a federal action that parallels a pending state court action. Pursuant to *Colorado River* and Eleventh Circuit precedent, this Court should stay this action pending the outcome of the parallel state court litigation. [2]

The Eleventh Circuit has recognized six factors for courts to weigh when considering the permissibility of abstention: "(1) whether one of the courts has assumed jurisdiction over property, (2) the inconvenience of the federal forum, (3) the potential for piecemeal litigation, (3) the order in which the fora obtained jurisdiction, (5) whether state or federal law will be applied, and (6) the adequacy of the state court to protect the parties' rights." *Ambrosia Coal and Construction Co. v. Pages Morales*, 368 F.3d 1320, 1331 (11th Cir. 2004). The "'weight to be given to any one factor may vary greatly from case to case.'" *Id.* at 1332 (citation omitted). However, "[o]ne factor alone can be the sole motivating reason for the abstention." *Moorer v. Demopolis Waterworks and Sewer Board,* 374 F.3d 994, 997 (11th Cir. 2004).

Unfortunately due to State Farm's vaguely crafted complaint and exhibits, B&A is unable to properly assert and inform this court which of the 4,678 individual claims meets the relevant factors pursuant to the Colorado River Abstention doctrine. As determined by the Eleventh Circuit, when evaluating the Colorado River Abstention doctrine, the weight of the factors can vary from case to case, and even one factor alone can be the motivating factor to stay the action. Should this court find that it requires more information than that included in State Farm's complaint and exhibits in order to properly

[2] "'[A] stay, not a dismissal, is the proper procedural mechanism for a district court to employ when deferring to a parallel state-court proceeding under the *Colorado River* doctrine.'" *Moorer v. Demopolis Waterworks and Sewer Bd.*, 374 F.3d 994, 998 (11th Cir. 2004).

evaluate the claims pursuant to the Colorado River Abstention doctrine, B&A requests this Court order State Farm to file a more definite statement, inclusive of the information required to evaluate this doctrine. B&A requests this court specifically order State Farm to identify: (1) which, if any, of the 4,678 claims fall under the jurisdiction of another court; (2) which court obtained jurisdiction on said claim; (3) manner in which said court obtained jurisdiction; (4) the state of litigation of the claims within another court's jurisdiction.

## V.   DISMISSAL OF UNJUST ENRICHMENT CLAIM AGAINST DEFENDANT, B&A

### a.   Standard of Law

The elements of a cause of action for unjust enrichment at Florida common law are that: 1) the plaintiff has conferred a benefit on the defendant, 2) the plaintiff has knowledge of the benefit;  3) the defendant has accepted or retained the benefit conferred; and 4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it. *Golden v. Woodward*, 15 So. 3d 664, 670 (Fla. Dist. Ct. App. 2009). Florida law is clear wherein unjust enrichment requires the benefit be direct to the litigant. *Kopel v. Kopel*, 117 So.3d 1147 (Fla. 3d DCA 2013).

### b.  Application to Facts

The sole basis for recovery in State Farm's instant claim is pursuant to a theory of Unjust Enrichment.  In its complaint, State Farm seeks to "recover the amounts it paid to Defendants based upon Unjust Enrichment". (C. ¶ 6).  As depicted in a footnote within State Farm's complaint, the recovery sought is limited to only diagnostic and radiological services rendered to claimants by B&A

from March 2008 through November 2011[3]. In order to adequately apply the theory of Unjust Enrichment to State Farm's claim, the four factors aforementioned, and delineated in the case of *Golden v. Woodward*, must be met.

State Farm fails to meet various factors required by Florida law in order to recover pursuant to the theory of unjust enrichment, against B&A. In arguendo, State Farm alleges that it conferred a benefit on all the named defendants, in order to meet the first factor listed. In paragraph 140 of their complaint, State Farm alleges that it "conferred benefits on Defendants by making payments to them pursuant to unlawful and false claims for PIP benefits for its insureds in the amounts listed in Exhibits 'D','I', 'M' and 'O'. However, State Farm, repeatedly discusses Ortiz, Velasco, and Genao's roles at B&A, as merely employees. State Farm, in its complaint, fails to take the next step in analyzing unjust enrichment as was taken in the *Kopel* case, by effectively alleging the conferred benefit was direct to said defendants, as is globally asserted in the Complaint. In regards to Ortiz, Velasco and Genao, by maintaining their statuses solely as employees of B&A, said employees never received a direct benefit from State Farm. Arguably, the only benefit Ortiz, Velasco and Genao ever obtained for his services of the State Farm insured they serviced as employees of B&A, were their wages paid by B&A. At any point in time, Ortiz Velasco and Genao did not receive any direct benefit from State Farm, and specifically did not directly receive a benefit for the services rendered to State Farm insureds in the specified time frame of March 2008-November 2011.

For argument purposes only, should this court disagree with above cited case law, and resolve that the benefit need not be directly conferred from plaintiff to defendant, State Farm fails to meet yet

[3] Plaintiff's complaint initially titles this time period of "March 2008-November 2011" as "The Relevant Time Period", however it should also be noted this timeframe encompasses numerous claims resolved via Settlement entered on October 6, 2014, between State Farm and B&A in Case No. 13-cv-24393-UU and barred pursuant to Res Judicata Doctrine.

another factor for unjust enrichment. State Farm is unable to prove that Ortiz, Velasco and Genao accepted and retained the benefit conferred. It naturally follows with said employees arguments, that if they did not receive an actual direct benefit from State Farm, then Ortiz, Velasco and Genao also did not accept or retain said hypothetical benefit. State Farm has not specifically alleged, or proven sufficient elements to support a claim of unjust enrichment against Ortiz Velasco and Genao. As such, due to the lack of receipt of any of any direct benefit from State Farm to Ortiz, Velasco and Genao, as well as the inability to prove that Ortiz, Velasco and Genao, has retained any specific benefit from services rendered to any of State Farm's insured in the instant claim, State Farm has failed to plead a proper cause of action for unjust enrichment towards Ortiz, Velasco and Genao and therefore, in turn, cannot recover directly from Ortiz, Velasco and Genao.

For any allegations contained within State Farm's complaint, under a theory of unjust enrichment against B&A, this court must pay proper attention to the timeframes of all the 4,678 claims as various claims are barred by Statute of Limitations, and Res Judicata doctrine as aforementioned. Should this court find that it is unable to make a final determination in regards to the 4,678 claims of unjust enrichment by State Farm directly to B&A, it should determine that a more definite statement is vital to proceed. This court should order that State Farm file a more definite statement delineating more information regarding the 4,678 claims alleged in the Complaint, specifically designed to support their allegations of unjust enrichment, (i.e. Cashed checks for all amounts allegedly paid to B&A.)

## VI. STATUTE OF LIMITATIONS ON CLAIMS BROUGHT IN STATE FARM'S COMPLAINT

Unjust Enrichment Claims Barred By the Statute Of Limitations

**a. Legal Standard**

The relevant statute of limitations for unjust enrichment claims is four (4) years. § 95.11(3)(k), Fla. Stat. (2011). In Florida, the statute of limitations runs from the time the Plaintiff's cause of action accrues. A cause of action accrues when the last element constituting the cause of action occurs. § 95.031(1), Fla. Stat. (2011). Statutes of limitations on unjust enrichment generally begin to run upon the occurrence of that event that created the alleged uncompensated benefit in the Defendant. *Beltran v. Vincent P. Miraglia, M.D., P.A.,* 125 So.3d 855 at 859 (Fla. 4th DCA 2013).

Specifically in this case the statute of limitations for the alleged unjust enrichment began to run when Ortiz, Velasco, and Genao respectively accepted and retained payment for any services rendered. Any such acceptance and retention of payment by Ortiz, Velasco, and Genao, before November 19, 2010 falls outside of the four (4) year statute of limitations for unjust enrichment. Therefore, B&A requests that any and all claims by which State Farm alleges that B&A was unjustly enriched on account of the expiration of the relevant statute of limitations should be dismissed.

**b. Application to Facts**

State Farm's Complaint states that it is entitled to recover all amounts allegedly previously paid to B&A for services rendered to patients listed in various exhibits attached to the complaint. (C. ¶ 140 and Exhibits "D", "I", "M", and "O"). The Complaint addresses the alleged conduct of B&A from March 2008 until November 2011. (Complaint, pg. 4, Footnote 2). Therefore, State Farm requests all monies paid to B&A, for services rendered to State Farm's insured, for any claims listed in Exhibits "D", "I", "M", and "O" be returned to State Farm. State Farm alleges they are entitled to collect their monies back from B&A as B&A was unjustly enriched.

State Farm argues in Paragraphs 139 through 146 of its Complaint that the alleged benefit conferred is State Farm's payment to B&A. Assuming, in arguendo, this Court agrees with State Farm's

allegation that B&A and the other named defendants were unjustly enriched, the statute of limitations would begin to run upon any alleged benefit conferred to B&A and the other named defendants, and would lapse in four years. State Farm's complaint was filed on November 19, 2014. Therefore, the statute of limitations for unjust enrichment expires when B&A, allegedly incurred and retained a benefit four years or longer prior to the date of filing. Because State Farm filed its complaint on November 19, 2014, any and all claims listed to support its theory of unjust enrichment are barred prior to November 19, 2010, by account of the expiration of the statute of limitations.

This Court should dismiss all claims against B&A, Ortiz, Velasco, and Genao, as first and foremost, the employees individually never conferred any direct benefit from State Farm. Second, should this Court disagree, the statute of limitations has run for any claims pertaining to B&A pre-dating November 19, 2010 and thus irrespective of any benefit allegedly received by any employee.

Additionally, State Farm fails to adequately distinguish which of the 4,678 claims were paid prior to November 19, 2010. Consequently, B&A is unable to adequately address which of the claims are barred pursuant to the statute of limitations for unjust enrichment and would alternatively request a more definite statement in order for B&A, and the other named defendants, to prepare an adequate defense to State Farm's claims.

Statute Of Limitations For Declaratory Judgment Sought By State Farm

**a. Legal Standard**

Based upon Section §95.11(2)(b), Florida Statute (2011) provides that "legal or equitable action on a contract, obligation, or liability founded on a written instrument" should be commenced within five (5) years. The intent of section §95.11(2)(b), is to limit the commencement of actions from the time of their accrual. Cf. *Walker v. Beech Aircraft Corp.*, 320 So.2d 418 (Fla. 3d DCA 1975).

Generally, a cause of action on a contract accrues and the statute of limitations begins to run from the time of the breach of contract. *Fradley v. County of Dade*, 187 So.2d 48 (Fla. 3d DCA 1966).

outstanding bills.

Once thirty days elapse and no benefits are paid on the claims, State Farm has effectively breached their contract. *Id*. The statute of limitations began to run upon State Farm's denial of the actual PIP claim. Applying the five-year statute of limitations for breach of contract in addition to the thirty-day period after which State Farm was notified of their breach establishes the time frame for the relevant statute of limitations. Therefore, any unpaid claims in which State Farm received notice of breach prior to October 18, 2009 shall be barred due to the statute of limitations. This date is established beginning on the date of the filed Complaint being November 19, 2014 and deducting five years and thirty days from notice of breach. As a result, the declaratory judgment for any and all unpaid claims in which State Farm was notified of breach on or before October 18, 2009 should be dismissed.

State Farm's complaint is not clear on what cause of action it's seeking to for a declaratory judgment. In the instance that they are attempting to recover based on fraud, claims of fraud are barred under Florida's four-year statute of limitations relating to fraud, section §95.11(3)(j), Florida Statutes (2011). Therefore, all claims known to State Farm or that State Farm should have known to stem from fraudulent activity will be barred from recovery four (4) years prior to filing of complaint. The relevant date for which the statute of limitation runs in this case is November 19,2010. Any and all claims related to B&A in which State Farm knew or should have known prior to November 19, 2010 should be barred by the statute of limitations.

## VII. DISMISSAL OF CLAIMS FOR ALLEGED VIOLATIONS OF 817.234(7)(a) AND FAILURE TO PLEAD FRAUD WITH PARTICULARITY (ONLY MED DIRECTORS AND B&A)

Co-Pay/Deductible: Lack of Standing and Failure to State a Cause of Action

In its Complaint, State Farm alleges that B&A engaged in a general business practice of waiving and/or failing to make a good-faith effort to collect co-payments and deductibles thereby committing insurance fraud as defined by Fla. Stat. Section §817.234(7)(a). State Farm further alleges that B&A's Medical Director, Genao, had a statutory duty to ensure that B&A's billings were not fraudulent and/or unlawful and that he failed to fulfill that duty by not ensuring that B&A made a good-faith attempt to collect any co-pay or deductible amounts from State Farm's insureds.

**a. Legal Standard of 817.234**

Florida Statute §627.736 commonly known as "The PIP statute" states that an insurer shall have a cause of action against any person convicted of, or who, regardless of adjudication of guilt, pleads guilty or nolo contendere to insurance fraud under §817.234…associated with a claim for personal injury protection benefits in accordance with this section. *!!73 7! )23 ! D !Ba ! ! Insurance Fraud*. Florida Statute §817.234(5) states that "any insurer damaged as a result of [illegible]tion of any provision of this section *when there has been a criminal adjudication of guilt* [em[illegible]ded] shall have a cause of action to recover compensatory damages, plus all reasonable investigation and litigation expenses, including attorneys' fees, at the trial and appellate courts." Within its Complaint, State Farm cites Florida Statute §817.234(7)(a) as it pertains to collection of co-payments and deductibles, which states in pertinent part that "with respect to a determination as to whether a service provider has engaged in such general business practice, consideration shall be given to evidence of whether the physician or other provider made a good-faith attempt to collect such deductible or copayment."

**b. Application to Facts**

B&A, along with its employees: Ortiz, Genao and Velasco, contend that State Farm lacks any

requisite standing to sue B&A as it has not offered any evidence demonstrating that B&A or its former Medical Director, Genao, engaged in any general business practice of waiving and/or failing to collect deductible amounts and/or co-payments from State Farm's insureds. Additionally, State Farm has not offered a scintilla of evidence to demonstrate that any such alleged conduct on the part of B&A or its former Medical Director, Genao, has caused State Farm any actual injury. Following the holding in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), such an allegation is conclusory and unsupported by any factual matter to allow this Honorable Court to reasonably infer that such an allegation is plausible on its face. As noted, State Farm does not provide this Honorable Court with sufficient factual information to pass the plausibility standard which requires State Farm to demonstrate more than a sheer possibility that a B&A has acted unlawfully.

Assuming arguendo that B&A failed to collect deductible and/or co-payment amounts as alleged in the Complaint, State Farm still fails to demonstrate how this presents an actual injury to it as said deductible and/or co-payment amounts are the financial responsibility of State Farm's insured, *not* State Farm. State Farm also fails to state a cause of action as to any such allegation regarding uncollected deductible and/or co-payment amounts as B&A has never been criminally adjudicated as required for State Farm to have a cause of action according to Florida Statute 817.234.

## VIII. DISMISSAL OF ALL CLAIMS PURSUANT TO FED. R. CIV. PRO. 12(b)(6)

### a. Standard or law

In order to state a claim, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." While a court, at this early stage in litigation, must consider the allegations contained in the complaint as true, this rule "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, the complaint's

allegations must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (citing *Bell Atlantic Corp*. *v*. *Twombly*, 550 U.S. 544, 555 (2007)). Further, "[t]hreadbare recitas of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).

In practice, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id*. (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. The plausibility standard requires more than sheer possibility that a defendant has acted unlawfully. *Id*. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. Id. Determining whether a complaint states a plausible claim for relief is a context-specific undertaking that requires the court to draw on its judicial experience and common sense. *Id*. at 679. In order to survive a motion to dismiss, a complaint must now contain factual allegations that are "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." 127 S. Ct. at 1965. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65. Taking the facts as true, a court may grant a motion to dismiss when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cty*. *Bd*. *Of Educ*. *v*. *Marshall Cty*. *Gas Dist*., 992 F.2d 1171, 1174 (11th Cir. 1993).

The Federal Rules of Civil Procedure, specifically rule 12(b)(6) dictate that a court may dismiss

an action, when a plaintiff has failed to properly plead or state the claim upon which relief can be granted, within their complaint. Due to numerous flaws in State Farms claim pursuant to a theory of Unjust Enrichment against B&A, and its employees, the proper application of the Res Judicata Doctrine, Rooker-Feldman Doctrine, Colorado River Abstention Doctrine, and applicable Statutes of Limitations, it would be inconceivable for this court to find State Farm has viable claim in this action. As such pursuant to Fed. R. Civ. Pro 12(b)(6), State Farm's Complaint should be dismissed in its entirety, with prejudice.

## IX. ALTERNATIVELY DEFENDANT REQUESTS THIS COURT ORDER STATE FARM TO PROVIDE A MOTION FOR MORE DEFINITE STATEMENT

State Farm's complaint attaches various exhibits, containing a list of over 4,678 individual patients that allegedly sought diagnostic or radiological treatment at B&A, for which they seek recovery pursuant to the theory of unjust enrichment. State Farm provided a list which merely stated the amount they previously paid to B&A and referenced a check number. State Farm did not include which, if any claims contained within the various exhibits, were partial payments made by State Farm or whether there are outstanding amounts owed to B&A. The exhibit lists also fails to differentiate between claims for services rendered by employees. There is also no distinction made by State Farm as to which claims fall under the Medical Directorship of Esteban Genao, versus Alex Alonso, M.D. for the relevant timeframe. State Farm fails to distinguish which of the 4,678 claims were ever in litigation, settled during litigation, etc. In order for the Defendants, and specifically B&A to properly and succinctly respond to the claims against it, State Farm must first distinguish its claims clearly, by way of filing a more definite statement. This court should grant B&A's request for a more definite statement so that B&A can determine how to adequately formulate a responsive pleading, and be placed on proper notice

of the actual allegations and claims against it.

WHEREFORE, B&A requests this Honorable Court grant this Motion to Dismiss, or in the alternative order State Farm provide a more definite statement as to its allegations, and award attorney's fees and costs, and grant such other relief this Court deems just and proper.

**CERTIFICATE OF SERVICE**

This is to certify that on January 19, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

Dated: January 19, 2015.

Respectfully submitted,

s/ *Munir D. Barakat*
MUNIR D. BARAKAT, Esq.
(Florida Bar Number: 17652)
mdb@barakatlegal.com
**BARAKAT LEGAL, P.A.**
255 Alhambra Circle, Suite 900
Coral Gables, Florida 33134
Telephone: (786) 472-1812
Facsimile: (786) 545-7195
Attorney for Defendants

**SERVICE LIST**

Sandra Lynn Heller
Akerman LLP
Las Olas Centre II, Suite 1600
350 East Las Olas Boulevard
Fort Lauderdale, FL 33301
954-463-2700
Email: sandra.heller@akerman.com

Nicholas J. Purvis
Akerman LLP
222 Lakeview Avenue
Suite 400
West Palm Beach, FL 33401
561-653-5000
Email: nicholas.purvis@akerman.com

David Ira Spector
Akerman LLP
777 South Flagler Drive
Suite 1100 West Tower
West Palm Beach, FL 33401
561-653-5000
Email: david.spector@akerman.com

Michael Cosculluela
Cosculluela & Marzano PA
14211 Commerce Way
Suite 300
Miami Lakes, FL 33016
Email: mcosculluela@cmpalaw.com