UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE  NO: 14-CV-24387-MOORE/MCALILEY

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY and
STATE FARM FIRE & CASUALTY
COMPANY,

       Plaintiff,

vs.

B&A DIAGNOSTIC, INC. n/k/a OASIS
MEDICAL CENTER CORP., ESTEBAN GENAO, M.D.,
ALEX ALONSO, M.D., ERNESTO ALVAREZ
VELASCO and JOSE ANGEL ORTIZ MAZA,

       Defendants.

_____/

## <u>STATE FARM'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT WITH MEMORANDUM OF LAW IN SUPPORT</u>

**[THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

Plaintiffs, State Farm Mutual Automobile Insurance Company ("State Farm Mutual") and State Farm Fire and Casualty Company ("State Farm Fire") (collectively "State Farm"), submit this Response opposing the Motion for Summary Judgment filed by Defendants, B&A Diagnostic, Inc. n/k/a/ Oasis Medical Center Corp. ("B&A"), Esteban Genao, M.D. ("Dr. Genao"), and Ernesto Alvarez Velasco ("Alvarez") (collectively, "Moving Defendants")[1] [ECF No. 121][2].

## I.    DEFENDANTS FAILED TO FILE ANY STATEMENT OF FACTS

The Moving Defendants' Motion for Summary Judgment does not comply with Rule 56, Federal Rules of Civil Procedure or Local Rule 56.1, Southern District of Florida. The Moving Defendants did not file a Statement of Material Facts as required by Local Rule. L.R. 56.1(a), Southern District of Florida[3].  Moreover, the Moving Defendants' Motion is completely devoid of any "specific references" to the record to support their Motion. *See* Local Rule 56.1(a)(2); Fed.R.Civ.P. 56(c). Rather, the Moving Defendants filed thousands of pages of documents and refer to them generally without any specific citations to those pleadings or evidence in the record. For example, the Moving Defendants filed the complete court record of a previous matter, consisting of 118 docket entries and thousands of pages, yet make no specific reference to any particular pleadings (or sections, paragraphs, or pages of pleadings, documents or other evidence) in making their general argument that claims in a previous matter are identical to the claims and issue in the instant case.  *See* [ECF No. 121] at ¶ 16. The Moving Defendants' obvious disregard for the Rules governing parties in this forum alone requires denial of their Motion for Summary Judgment. *Ocean's 11 Bar & Grill, Inc. v. Indemnity Ins. Corp. RRG*, Case

---

[1] Defendant, Alex Alonso, M.D. ("Dr. Alonso") is represented by other counsel and did not join in the Moving Defendants' Motion for Summary Judgment.

[2] Both the Moving Defendants and Defendant Dr. Alonso filed Motions for Extension of Time in which to file Responses to State Farm's Motion for Summary Judgment. [ECF No. 126] [ECF No. 124] predicated upon a representation to this Court that these responses were due September 8, 2015.  Presumably relying upon this representation as accurate, the Court granted these Motions, granting an "extension" to respond on or before September 14, 2015.  [ECF No. 127] [ECF No. 125]. These representations to the Court were inaccurate, as the deadline to respond to Summary Judgments timely filed on August 28, 2015 is September 14, 2015.  *See* Fed.R.Civ.P. 6(a); Local Rule 7.1(c)(1). As such, State Farm did not request an extension for the filing of the instant Response.

[3] "A motion for summary judgment and the opposition thereto shall be accompanied by a statement of material facts as to which it is contended that there does not exist a genuine issue to be tried…" L.R. 56.1(a), Southern District of Florida.

No. 11-61577-Altonaga, 2012 WL 2675435, *2-3 (S.D. Fla. July 6, 2012) (denying plaintiff's summary judgment motion because, although plaintiff included citations to facts in the body of the motion, it did not file separate statement of facts in accordance with Local Rule 56.1 and therefore failed "to inform the court of the basis for its motion."); *Salas v. Ben L. Schachter, D.V.M.*, Case No. 14-81483-Rosenberg, 2015 WL 5118139, *2 (S.D. Fla. Aug. 31, 2015) (disregarding statement of facts where plaintiff filed 11 exhibits spanning 1,301 pages with no pincites, and refusing to "undertake an expedition…with the hope of stumbling upon some portion of the record that merely suggests a disputed issue of fact.") (citation and quotation marks omitted); *Attea v. Univ. of Miami Miller School of Medicine*, 12-23933-King, 2014 WL 5319858, *8 (S.D. Fla. Oct. 16, 2014) (adopting Magistrate Otazo-Reyes's recommendation to strike defendant's statement of facts because it did not comply with Local Rule 56.1).

## II.     BACKGROUND

In this action, State Farm seeks recovery of more than $1.4 million in damages from the Defendants for the perpetration of a fraudulent scheme to unlawfully obtain payment of Personal Injury Protection ("PIP") benefits of State Farm insureds. Under this scheme, Defendants knowingly or with reckless disregard permitted B&A to operate in violation of numerous Florida laws, rules and regulations promulgated specifically to protect the general welfare of its patients and the public. Despite the representation to the State of Florida that B&A employed a legally compliant Medical Director who supervised the day-to-day operations of the clinic and ensured that the services billed were not unlawful or fraudulent (amongst other duties), in truth, the Medical Directors allowed B&A to improperly and unlawfully operate on a host of levels. This scheme included: (1) employing uncertified X-ray technicians, (2) unlawfully employing and supervising the lowest of level X-ray technician, (3) failing to undertake and perform the statutory obligations of a medical director, including failure to provide oversight and supervision of the day-to-day activities of B&A, and (4) engaging in a global business practice of waiving (or failing to make a good-faith effort to collect) copayments or deductibles from its patients, a practice Florida law defines as "insurance fraud." In fact, B&A and its Medical Directors, by their own admission, had absolutely no understanding of the legal requirements of a Medical Director under Florida law.  As a result, State Farm was not obligated to pay claims submitted by B&A that were unlawfully rendered and noncompensable.   Fla. Stat. §  627.736(1)(a); §627.736(5)(b)(1)(b).

The Moving Defendants' Motion seeks summary judgment on the basis of three affirmative defenses: 1) res judicata; 2) statute of limitations; and 3) failure to state a claim for violation of Fla. Stat. § 817.234. As set forth below, the Motion falls woefully short of establishing that no genuine issue of material fact exists as to the affirmative defenses alleged by the Moving Defendants.[4]

The Moving Defendants are not entitled to summary judgment for the following reasons:

- The Settlement Agreement entered into between State Farm Mutual and B&A in the matter of *State Farm Mut. Auto. Ins. Co. v. B&A Diagnostic, Inc. et al.*, Case No. 13-cv-24393-Ungaro (hereinafter the "2013 Action"), clearly establishes that the claims at issue in the instant Complaint are not barred by the doctrine of *res judicata*;

- The doctrine of equitable tolling operates to toll the statute of limitations in this case due to Defendants' repeated false and misleading representations to State Farm that the services billed were lawful and not fraudulent which caused State Farm to pay claims it was not required to pay in the first place;

- The statutory delayed discovery doctrine applies to State Farm's claims in this case, which are based upon an unlawful and fraudulent scheme to unlawfully obtain its insureds' No-Fault benefits, and as a result, all claims timely asserted;

- Defendants cite to no record evidence to support when State Farm knew (or should have known) about the unlawful scheme to obtain insurance benefits perpetrated by Defendants to even suggest that the claims are time barred; and

- As the Eleventh Circuit and this Court have held, State Farm has stated a claim for unjust enrichment based, in part, on Defendants' repeated violations of Florida law, including the continuous and systematic violation of Fla. Stat. § 817.234(7)(a), and no adjudication of guilt is required to state such a claim.

## III.   MEMORANDUM OF LAW

### A.   LEGAL STANDARD

"Summary judgment is proper when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue as to any material fact and compels judgment as a matter of law." *Findwhat Investor Group v. Findwhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011). The party moving for summary judgment bears the initial burden to show there is an absence of genuine issues of material fact such that a trial would be unnecessary. *See Celotex*

---

[4] Indeed, the record evidence establishes that no genuine issue of material fact remains as to the claims in State Farm's Complaint and State Farm is entitled to final summary judgment in its favor. *See* [ECF No. 122] [ECF No. 123] incorporated herein by reference.

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). To discharge this burden, the moving party must point out to the Court that there is an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325.

      **B.**      **RES JUDICATA DOES NOT BAR STATE FARM'S CLAIMS**

          *1.*      *Pursuant to the Parties' Settlement Agreement in the 2013 Action, None of the Claims at Issue in this Matter is Barred by the Doctrine of Res Judicata.*

As set forth below, in cases resolved by settlement, the settlement agreement—not the pleadings—dictates the scope of claims or issues subject to res judicata. The Settlement Agreement [ECF No. 121-1] precipitating the parties' voluntary dismissal of the 2013 Action ([ECF No. 98-1] at p. 308) contains **no release** by State Farm of any claims, causes of action, or damages not expressly identified in the exhibits to the Amended Complaint in the 2013 Action. The intent of the parties to resolve only the discreet damages at issue in the 2013 Action is unmistakably apparent from the face of the Settlement Agreement and none of the claims, damages or issues in this matter are barred by the doctrine of res judicata.

Res judicata determinations are pure questions of law. *Norfolk S. Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1288 (11th Cir. 2004). The doctrine of res judicata bars subsequent litigation only where there is (1) identity of the thing sued for, (2) identity of the cause of action, (3) identity of persons and parties to the action, and (4) identity of the quality or capacity of the person for or against whom the claim is made." *Saboff v. St. John's River Water Mgmt. Dist.*, 200 F.3d 1356, 1360 (11th Cir. 2000). "Where the parties consent to a dismissal of the complaint based on a settlement agreement, the principles of res judicata continue to apply, albeit in a somewhat modified form, to the matters specified in the settlement agreement rather than the original complaint." [ECF No. 32] at p. 9 (*citing Norfolk*, 371 F.3d at 1288). As this Court previously held in denying the Moving Defendants' Motion to Dismiss [ECF No. 32], "[t]he doctrine of res judicata holds that '[a] judgment on the merits constitutes a bar to any subsequent action on the *same claim or demand*, but operates as an estoppel *only as to portions actually litigated and determined* where the second action is on a different claim or demand, or is on the same claim or demand as against the same parties and others who were not parties before." [ECF No. 32] at p. 9 (*quoting McGregor v. Provident Trust Co. of Philadelphia*, 162 So. 323, 329 (Fla. 1935)) (emphasis added).

In determining the res judicata effect of an order of dismissal based upon a settlement agreement, the court looks to the parties' intent. *Norfolk*, 371 F.3d at 1289; *see also Balbirer v. Austin*, 790 F.2d 1524, 1528 (11th Cir. 1986) ("[A] consent judgment cannot constitute collateral estoppel unless the party pleading collateral estoppel proves from the record of the prior case or through extrinsic evidence that the parties intended the consent judgment to operate as a final adjudication of a particular issue.") "The best evidence of that intent is, of course, the settlement agreement itself." *Id*. The scope of the preclusive effect of a voluntary dismissal based on settlement "should not be determined by the claims specified in the original complaint, but instead by the terms of the Settlement Agreement, as interpreted according to traditional principles of contract law." *Id*. A settlement agreement entered into in the context of a voluntary dismissal with prejudice should be interpreted according to its express terms, rather than according to traditional principles of res judicata, in determining the preclusive effect. *Id*. at 1290-91.

More specifically, in determining the scope of the claims subject to res judicata, one looks to the release language in the settlement agreement. *Id*. at 1290 (denying preclusion for claims not specifically released by the express language of the settlement agreement); *In re Managed Care Litigation*, 2010 WL 6532982, at *10 (S.D. Fla. Aug. 15, 2010) (precluding claims based on the "unambiguous release language" in the settlement agreement precipitating dismissal of the prior action); *Harty v. Ehden*, 2012 WL 2312044, *2 (S.D. Fla. June 18, 2012) (applying res judicata to claims expressly barred by the release language in the settlement agreement). Indeed, the *Norfolk* Court stated that while traditional principles of res judicata require preclusion of claims arising from the same nucleus of operative fact, and that allowing suits to be split would frustrate the goal of preventing piecemeal litigation, for claims dismissed based on a settlement agreement, these traditional principles of res judicata do not apply. *Norfolk*, 371 F.3d at 1290-91.

It is undisputed that the Parties jointly and voluntarily dismissed with prejudice the 2013 Action pursuant to the Parties' Settlement Agreement [ECF No. 121-1] and that State Farm did not, in any way, granted a release. The Moving Defendants' Motion provides no analysis regarding the scope of claims released nor the intent of the parties as expressed by the Settlement Agreement. A review of the Settlement Agreement makes clear that the parties to the agreement (State Farm Mutual and B&A) did not intend to release *any* claims, damages, or unlawful

activities apart from the specific services identified in exhibits to the Amended Complaint in the 2013 Action.  The Settlement Agreement states:

> The Parties will dismiss with prejudice all claims and counterclaims filed against the other party in the case styled State Farm Mutual Automobile Insurance Company v. B&A Diagnostic, Inc. n/k/a Oasis Medical Center Corp., and Ernesto Alvarez Velasco, Case No. 1:13-cv-24393-UU pending in the United State District Court, Southern District of Florida **pertaining to those damages identified on Exhibits "E" and "J" to the Amended Complaint**.
>
> …
>
> Notwithstanding the foregoing, the Parties collectively expressly acknowledge and agree that this agreement **has no effect on any rights the Parties, or any non-party, may have pertaining to any other dispute, claims, damages, charges or causes of action which any entity may in the future pursue**.

[ECF No. 121-1] at p. 2 (bold emphasis added). The intent of the parties is clear. The parties intended to dismiss only those specific claims or charges identified in Exhibits "E" and "J" to the Amended Complaint. None of the claims, charges or services identified in Exhibits "E" and "J" (or Exhibits "F" and "K") to the Amended Complaint in the 2013 Action are included anywhere in the claims, charges or services identified in this matter.[5] Accordingly, the plain language of the settlement agreement not only supports a denial of summary judgment in favor of the Moving Defendants, but it supports an order granting summary judgment in favor of State Farm on the issue of res judicata.

> 2.   *Additionally, the Moving Defendants Have Not Shown that There is An Identity of the Parties or Identity of the Thing Being Sued For.*

While the absence of a release in the Settlement Agreement is conclusive, even if this Court were to consider the pleadings in the prior action, the Moving Defendants cannot carry their burden to establish there is an identity of the parties or identity of the causes of action.

---

[5] While the Moving Defendants Motion may be interpreted as arguing that the same claims, services or medical bills at issue in the 2013 Action are at issue in the instant case (*see* [ECF No. 121] at ¶13), there is no record evidence to support this conclusory assertion.  Indeed, a comparison of the claims exhibits in the 2013 Action (*see* Amended Complaint at Exhibits E, F, J and K [ECF No. 96-1] at pp. 82, 94, 111 and 120) and the claims exhibits in the instant case (*see* [ECF No. 1] at Exs. D, E, I, J, M, N, O and P) reveals that not a single claim, charge or service appears in both matters. *See also* Affidavit of Theresa de la Noval at ¶ 4, attached hereto as Exhibit "A." (confirming there is no overlap in the claims).

i.        Background of the Claims in the 2013 Action.

On December 5, 2013, State Farm Mutual (not State Farm Fire) filed its Complaint in the 2013 Action against B&A and Alvarez. [ECF No. 94-1] at p. 2 *et seq*. State Farm Mutual alleged that the services rendered *by Alvarez*, from June 2009 through November 30, 2010, were unlawful because he was not certified in compliance with Florida law and the Florida Administrative Code ("FAC.")  [ECF No. 94-1] at p. 3, ¶¶ 3-6. State Farm Mutual also alleged that the services were unlawful and noncompensable because the Medical Directors at B&A, Drs. Genao and Alonso, failed to fulfill their obligations to ensure Alvarez possessed the required certification. [ECF No. 94-1] at pp. 10-11, ¶¶ 52, 54.  The nucleus of the claims in the Complaint revolved entirely around Alvarez's operation of radiological equipment without proper licensure, and B&A and its Medical Directors' failure to ensure only that Alvarez was properly certified before it allowed him to performed radiologic services on patients.  The only services for which State Farm Mutual sought restitution and/or declaratory relief was for x-rays performed by Alvarez on only State Farm Mutual's insureds. [ECF No. 94-1], pp. 10, 12, ¶¶ 47, 56-58.

On May 5, 2013, State Farm filed its Amended Complaint in the 2013 Action.  [ECF No. 96-1] at p. 1 *et seq*. The Amended Complaint added allegations related to the discreet issue regarding the unlawful employment and supervision of a radiologic technician, Ortiz. *Id*. Just like the narrow claims specifically pointed at Alvarez, the allegations added to the Amended Complaint were narrowly tailored to the unlawful actions related only to the wrongful employment and supervision of Ortiz. *Id*. The Amended Complaint sought restitution for **only the services rendered by Alvarez prior to his proper licensure, and for the services rendered by Ortiz during his unlawful employment at B&A.** [ECF No. 96-1] at pp. 12-20, ¶¶ 61-107. The allegations against B&A regarding its failure to comply with the HCCA in the Amended Complaint were likewise limited to B&A and its Medical Directors' failure to ensure the licensure of Alvarez and the proper employment and supervision of Ortiz.[6]  [ECF No. 96-1] at pp. 14, 18, ¶¶72, 92.

---

[6] In the instant action, State Farm Mutual (the only plaintiff to the 2013 Action) does not seek restitution from Alvarez and/or Ortiz, and has not alleged claims against B&A related to any services rendered unlawfully by Alvarez and/or Ortiz. *See* [ECF No. 1].

ii.        The Parties Are Not Identical

In their Motion, the Moving Defendants conclusively allege that there is "identity of the persons and parties to the action."  [ECF No. 121] at ¶ 13. This is unsupported and erroneous. The only parties to the 2013 Action were State Farm Mutual, B&A and Alvarez.  [ECF No. 96-1] State Farm Fire, Dr. Genao, Dr. Alonso and Ortiz were not parties to the 2013 Action, and therefore, claims brought by State Farm Fire against all Defendants and claims brought by State Farm Mutual against Dr. Genao and Dr. Alonso do not meet the identity of the parties requirement. *Massey v. David*, 831 So. 2d 226, 232 (Fla. 1st DCA 2002) ("Identity of parties and mutuality do not exist unless the same parties or their privies participated in prior litigation that eventuated in a judgment by which they are mutually bound) (citing *Gentile v. Bauder*, 718 So.2d 781, 783 (Fla.1998)); *Stogniew v. McQueen*, 656 So.2d 917, 919 (Fla. 1995) ("[U]nless both parties are bound by the prior judgment, neither may use it in a subsequent action.").

iii.        There Is No Identity of the Cause of Action.

Identity of the cause of action "is a question of whether the facts or evidence necessary to maintain the suit are the same in both actions." *Tyson v. Viacom, Inc.*, 890 So. 2d 1205, 1209 (Fla. 4th DCA 2005) (quoting *Albrecht v. State*, 444 So. 2d 8, 12 (Fla. 1984)). "Identity of the causes of action is established where the facts which are **required** to maintain both actions **are identical**." *Id.* (citations omitted) (emphasis added). The mere fact that both matters alleged the same legal cause of action for unjust enrichment is not relevant, as the Moving Defendants would suggest. The 2013 Action was limited to services rendered by two specific technicians, Alvarez and Ortiz on State Farm Mutual's insureds, and was based on the specific failure of Alvarez to be properly certified and Ortiz to be properly employed and supervised. While the allegations brought by State Farm Fire in this action, which was not a party to the 2013 Action, related to X-ray services performed by Alvarez and Ortiz are in part based on the same set of facts brought by State Farm Mutual in the 2013 Action, the allegations brought by State Farm Mutual in this case are based on an entirely different core of operative facts.  In the instant action, the failure of the medical directors at B&A to ensure the proper employment, supervision and licensure of Alvarez and Ortiz is just one of many examples supporting State Farm's argument that B&A and its medical directors wholly and completely failed to comply with Florida law in performing their statutory obligations.

Specifically, the difference in the core operative facts of this case and the 2013 Action are significant:

| Issue | 2013 Action | Instant Action |
|---|---|---|
| Alvarez's Lack of Certification | ✓<br><br>[ECF No. 96-1] at pp. 15-17, ¶¶ 61-74. | State Farm Fire Only [ECF No. 1] ¶84, Ex. D and E. |
| Ortiz Improper Employment and Supervision | ✓<br><br>[ECF No. 96-1] at pp. 17-23¶¶ 75-107. | State Farm Fire Only [ECF No. 1] at ¶ 103, Ex. I and J. |
| Medical Director Compliance Limited ONLY to the discreet issue of failing to ensure proper certification and employment of Alvarez and Ortiz | ✓<br><br>[ECF No. 96-1] at p. 17, 22, ¶¶ 72, 100. | |
| Damages only pertaining to services rendered by Alvarez and Ortiz. | ✓<br><br>[ECF No. 96-1] at pp. 17, 20, ¶¶ 71, 90. | |
| Damages for all services rendered between March 21, 2008 through November 16, 2011 exclusive of any services rendered by Alvarez and Ortiz (State Farm Mutual). | | ✓<br><br>[ECF No. 1] at ¶¶118, 120. |
| Failure to make a good-faith effort to collect copayments and/or deductibles | | ✓<br><br>[ECF No. 1] at ¶¶49-60. |
| Medical Directors' failure to ensure bills did not contain charges for unlawful or fraudulent treatment | | ✓<br><br>[ECF No. 1] at ¶¶105-122. |
| Medical Directors' failure to ensure B&A was lawfully making an effort to collect copayments and deductibles from its PIP patients. | | ✓<br><br>[ECF No. 1] at ¶¶121. |
| Medical Directors' failure to provide lawful day-to-day supervision of B&A | | ✓<br><br>[ECF No. 1] at ¶¶118, 120. |
| Medical Directors' failure to provide oversight of B&A required to obtain clinic licensure | | ✓<br><br>[ECF No. 1] at ¶¶49-60, |

| | | 109, 114, 117, 142. |
|---|---|---|
| Dr. Genao's admission that he provided none of the statutorily required duties of a medical director under Florida law | | ✓<br><br>[ECF No. 1] at ¶ 114. |

The Moving Defendants' Motion fails to articulate the degree of similarity, much less identity, of the causes of action.

The basis of the 2013 Action is not grounded in the medical directors' across-the-board failure to comply with their statutory duties, and does not contemplate the actions of B&A and its medical directors leading to the unlawfulness and noncompensability of all services rendered by B&A as a result. Rather, the 2013 Action focused on the discreet failures of B&A and its medical directors related only to the licensure and employment of two specific individuals. The 2013 Action does not allege Defendants' intentional disregard of Fla. Stat. § 817.234 and business practice of waiving copays and deductibles, and does not concern B&A and its medical directors' failure to oversee the operations of B&A as it relates to services provided by technicians other than Ortiz and Alvarez.

 In the instant case, State Farm has alleged that *all* services rendered at B&A during the relevant time period were unlawful and noncompensable due to the overarching failure of B&A and its medical directors to comply with a number of their statutory duties required by Florida law, including their failure to oversee day-to-day clinic operations and commission of "insurance fraud" based on the failure to acknowledge any statutory obligation to collect co-payments and deductibles, let alone any good faith effort towards collection. [ECF No. 1] at ¶¶61-70, 105-122. Importantly, much of the evidence to support this systematic scheme was not obtained by State Farm Mutual and State Farm Fire until June, July and September 2014, after the 2013 Action had already been filed.  [*See* ECF No. 1] at ¶¶114, 117, Exs. K and L. State Farm has alleged that these failures resulted in all the services being unlawful as a result of these complete and inexcusable failures to comply with the statutes governing medical directors and healthcare clinics.  [ECF No. 1] at ¶130.  To prevail in the 2013 Action, State Farm Mutual only needed to prove that Alvarez was not properly certified, Ortiz was not properly employed and/or

supervised, and that they were performing radiologic services during this time period[7]. To prevail here, State Farm Mutual (and State Farm Fire) must prove (and has proven) that the medical directors at B&A failed to lawfully perform their statutory medical director duties to an extent that renders all services provided by B&A during that time period unlawful.

Further, the doctrine of res judicata does not apply simply because some of the supporting facts overlap. *See Tyson v. Viacom, Inc.*, 890 So. 2d 1205, 1210 (Fla. 4th DCA 2005). In *Tyson*, the Florida Fourth District Court of Appeal reversed summary judgment and held that an employee's initial action alleging whistle-blower violations was not the same cause of action for purposes of res judicata as the employee's second claim alleging breach of contract and fraudulent inducement by the employer. *Tyson*, 890 So. 2d at 1209-12. The Court reasoned that the facts "essential" to the employee's whistle-blower claim in the initial action, despite some overlap, were not "identical" to the facts and theories supporting his second action for breach of contract and fraudulent inducement. *Id*. Notably, the fact that the employee's employment lasted only a few months and that the facts giving rise to the first and second causes of action were interrelated and arose from the same time period was insufficient to meet the identity of a cause of action at the summary judgment stage. *Id*. The Court held that while all of the claims from this short time period occurred within and affected the course of the plaintiff's employment, such a broad interpretation of "identity of a cause of action" to include facts surrounding the "employment relationship" was too broad an interpretation for res judicata. *Id*. at 1212 The Court's following conclusion is instructive:

> The reality that the three separate sets of facts may exist within a larger set of facts, such as an employment relationship, is no obstacle to this conclusion, because "the whole is more than the sum of its parts." Aristotle, *Metaphysica*. **Other facts exist in the context of the whole, so that the whole is not identical to any of its three component sets of facts, just as they are not identical to each other**. If this were not our approach to res judicata, a slippery slope could soon bar a range of suits related only by the broadest of contexts, **such as the provision of medical care and treatment by all types of professionals to all patients for all ailments**.

---

[7] These are the same issues that State Farm Fire, which was not a party to the 2013 Action, must prove in this case related to its specific claims against Defendants related to the X-rays performed by Alvarez and Ortiz.  State Farm Mutual has not alleged any claims related to services provided by Alvarez or Ortiz in this case.

*Id.* (bold emphasis added).  Indeed, a comparison of the Amended Complaint in the 2013 Action and the Complaint in this case reveals that, while there is minimal overlap regarding the medical director's failure to ensure the proper employment, supervision and certification of Alvarez and Ortiz, the facts alleged to support a wholesale failure to designate a lawful medical director in the instant action go far beyond the limited facts required to prevail in the 2013 Action.

### C. THE DELAYED DISCOVERY AND EQUITABLE TOLLING DOCTRINES PRECLUDE ENTRY OF SUMMARY JUDGMENT BASED ON STATUTE OF LIMITATIONS.

The Moving Defendants argue that a portion of the claims against them are barred by the statute of limitations because State Farm conferred the benefit in question more than four years prior to filing the instant Complaint. [8] Defendants are wrong. Both the doctrine of equitable tolling and the delayed discovery doctrine operate either to toll the statute of limitations or delay its accrual in this case.  *See State Farm Mut. Auto. Ins. Co. v. Kugler*, Case No. 11-cv-80051-Hurley, 2011 WL 4389915, *13 (S.D. Fla. Sept. 21, 2011) (State Farm's claims for, *inter alia*, unjust enrichment "are subject to the four year statute of limitation, but the perimeters of this limitations period are appropriately defined by reference to the delayed discovery doctrine…and the doctrine of equitable tolling…") The Moving Defendants' Motion completely ignores the deceptive and misleading conduct State Farm alleges Defendants undertook in obtaining $1.4 million from State Farm and its insureds and Defendants' efforts to conceal the unlawful and fraudulent nature of the services. Accordingly, both doctrines are applicable in this case and none of State Farm's claims are time-barred.

### 1. *The Delayed Discovery Doctrine.*

#### i. The delayed discovery doctrine applies to State Farm's claims in this case.

The delayed discovery doctrine applies to State Farm's claims that Defendants' repeated false and misleading representations to it induced State Farm to pay in excess of $1.4 million for

---

[8] Notably, the Moving Defendants' Motion only asserts that *a portion* of the claims at issue, totaling $573,853.33 out of $1.4 million, are time-barred.  [ECF No. 122] at ¶¶ 19, 23. The Moving Defendants admit to not having carried their initial burden to show the remaining claims are barred by the Statute of Limitations, including claims purportedly "likely" time-barred.  *See* [ECF No. 122] at ¶¶ 20, 23.  Accordingly, even if the Moving Defendants were correct that a portion of State Farm's claims are time barred, which they are not, the Court cannot dismiss the entire action against Defendants on this basis and summary judgment is only appropriate on the limited claims the Moving Defendants have carried their initial burden.

treatment that was unlawful, fraudulent and not compensable. Fla. Stat. § 95.031(2)(a). While the State of Limitations on State Farm's claims is four (4) years, *see* Fla. Stat. § 95.11(3)(j)[9], the delayed discovery doctrine delays the accrual of the cause of action until such time that State Farm knew or should have known of the facts giving rise to its claims.  The doctrine is codified as follows:

> (2)(a) An action **founded upon fraud** under s. 95.11(3), including constructive fraud, must be begun within the period prescribed in this chapter, **with the period running from the time the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence, instead of running from any date prescribed elsewhere in s. 95.11(3)**, but in any event an action for fraud under s. 95.11(3) must be begun within 12 years after the date of the commission of the alleged fraud, regardless of the date the fraud was or should have been discovered.

§95.031(2)(a), Fla. Stat. (2014) (emphasis added).  Duped fits

There can be no question that this action is founded upon fraud. As State Farm alleges, Defendants submitted nearly 5,000 separate bills to State Farm which each falsely represented that the services identified on those bills were lawfully provided, not fraudulent and compensable. [ECF No. 1] at ¶ 124-127; *see also* Fla. Stat. § 627.736(5)(a) (only a clinic "lawfully rendering treatment to an injured person…may  charge the insurer…."). In fact, Defendants admitted that by submitting the each bill to State Farm, they represented that all services contained on this bills were for lawfully rendered treatment. [ECF No. 85-1] at 145:13-146:8, [ECF No. 83-1] at 104:2-5.  However, these thousands of representations **were false** on a host of levels. [ECF No. 1] at ¶¶ 127-137. Particularly, B&A and its medical directors, *inter alia*:

---

[9] A claim for "unjust enrichment" is not specifically identified in Florida's limitations statute. *See* Fla. Stat. §95.11.  There is no universal limitations period that applies to all claims for unjust enrichment, rather, the applicable limitations period depends on the nature of the claims brought against the Defendant. Indeed, Florida courts have applied the limitations period in various subsections of §95.11 to claims of unjust enrichment depending on the nature of the underlying allegations. *See Calder v. Uwanawich*, 449 So. 2d 911, 912 (Fla. 3d DCA 1984) (Pearson, D.S., dissenting) (stating, as here, Plaintiff's claims for unjust enrichment were subject to four year limitations period in section 95.11(3)(j)); *Blackburn v. Bartsocas*, 978 So. 2d 820, 823 (Fla. 4th DCA 2008) (finding plaintiff's claims for unjust enrichment were for past wages and applying section 95.11(4)(c), Florida Statutes); *Grove Isle Ass'n, Inc. v. Grove Isle Assoc.*, LLP, 137 So. 3d 1081, 1095 (Fla. 3d DCA 2014) (applying section 95.11(3)(p)); *Swafford v. Schweitzer*, 906 SO. 2d 1194, 1195 (Fla. 4th DCA 2005) (applying section 95.11(3)(k) in quasi-contract dispute). TSection 95.11(3)(j), Florida Statutes, the limitations period for actions founded upon fraud, best corresponds to State Farm's allegations that it was deceived into paying for unlawful and noncompensable claims submitted by B&A.

(1) failed to enter into a written medical director agreement agreeing to accept legal responsibility for their statutory medical director obligations [ECF No. 1] at ¶ 106; (2) failed to ensure that all health care practitioners at the clinic have active appropriate certification or licensure for the level of care being provided [ECF No. 1] at ¶¶ 107, 113-114, 116-117; (3) failed to ensure the bills submitted by B&A to State Farm did not contain charges for services that were fraudulent or unlawful [ECF No. 1] at ¶¶ 114-117; (4) failed to provide day-to-day supervision of B&A [ECF No. 1] at ¶¶ 118-120; and (5) engaged in "insurance fraud" in that Defendants waived, or failed to make a good-faith effort to collect, a single copayment or deductible from its patients [ECF No. 1] at ¶¶ 61-70, 119, 121.[10]   State Farm reasonably relied on upon these representations from B&A and its medical directors [ECF No. 1] at ¶¶ 125-126[11], and as a result, State Farm paid Defendants $1,478,848.40.   [ECF No. 1] at Ex. D, I, M and O. There is no question that this action has been alleged as a fraud.

An action need not allege a cause of action *for fraud* in order for the doctrine to apply. Prior to 2003, the delayed discovery statute was applicable to "[a]n action for fraud…"   § 95.031(2)(a), Fla. Stat. (2002).  However, in 2003, the Florida Legislature amended the delayed discovery statute to clarify that the delayed discovery doctrine applies not only to "***an action for fraud***" but to any "***action founded upon fraud***…" Fla. Stat. § 95.031(2)(a) (2014).

Recently, on August 7, 2015, Judge Gayles applied the delayed-discovery doctrine in a nearly identical context to claims for unjust enrichment. In *State Farm Mut. Auto. Ins. Co. v. First Care Solutions, Inc.*, Case No. 15-cv-21215-Gayles (S.D. Fla. Aug. 7, 2015) [DE 72], the Court denied Defendants' Motion to Dismiss the Complaint based on Statute of Limitations.  *See* Endorsed Order Denying Motion to Dismiss for reason stated on the record [DE 72] attached as

---

[10]  The record evidence also substantiates all of State Farm's allegations. Particularly, that Defendants: (1) engaged in a practice of "insurance fraud" by making no effort to collect copayments or deductibles from its patients [ECF No. 122] at ¶¶ 10-18; (2) represented to ACHA that the Medical Directors undertook the legal obligation to assume responsibility for the duties set forth in §400.9935, Fla. Stat. and the F.A.C. [ECF No. 118-2] [ECF No. 118-3] when in fact they did not [ECF No. 122] at ¶¶ 46-66; (3) represented to State Farm that the bills submitted were for lawfully rendered and compensable services [ECF No. 85-1] at 145:13-146:8, [ECF No. 83-1] at 104:2-5; and (4) caused State Farm to rely on these representations in making the payments for which it now seeks restitution. De la Noval Aff. (Ex. 1) at ¶¶ 5-6.

[11]  State Farm relied upon the representations from Defendants that the services identified on the bills were lawfully rendered and compensable.  *See* Affidavit of Theresa De la Noval at ¶ 5, attached hereto as Exhibit "1."

Exhibit "2"; *see also* relevant excerpts of the hearing record dated August 7, 2015 attached as Exhibit "3."   In denying the Defendant providers Motion to Dismiss, the Court found that "the complaint asserts claims founded upon fraud, though fraud is not specifically asserted as a cause of action…"  Ex. 3, p. 55.  Accordingly, the Court held that "[t]he delayed discovery doctrine is applicable under the circumstances in that the claims are founded upon fraud."  *Id*.

Likewise, in *Harbaugh v. Greslin*, Judge Cohn analyzed the applicability of the delayed discovery doctrine to claims for fraud, unjust enrichment, and breach of contract subsequent to the 2003 amendment to section 95.031. *Harbaugh v. Greslin*, Case No. 03-cv-61674-Cohn, 2004 WL 5589736, *2-3 (S.D. Fla. Dec. 14, 2004).  In denying the defendants' motion to dismiss, the Court held that "the issue of when Plaintiff became aware of the misrepresentations…is a question of fact for the jury to determine."[12] Likewise, the Middle District of Florida has also applied the same rationale to the current form of the delayed discovery statute and applied it to claims for unjust enrichment. *See Al-Rayes v. Willingham*, Case No. 06-cv-00362-Covington, 2007 WL 430738, *3-4 (M.D. Fla. Feb. 5, 2007) (denying motion to dismiss and holding that the delayed discovery doctrine applied to plaintiff's claims for, inter alia, unjust enrichment).

Accordingly, the allegations in State Farm's complaint (and the record evidence) leave no question that the delayed discovery doctrine applies.  Therefore, State Farm's claims in this case did not accrue until State Farm knew or should have known of the facts underlying Defendants' unlawful activity. Furthermore, as detailed below, the only record evidence clearly establishes that State Farm was not aware of Defendants' unlawful and inequitable conduct until within the limitations period.

ii.     <u>The Record Evidence Establishes Only that State Farm Did not Become Aware of the Defendants' Unlawful Conduct Until December 2010 or Later, Within the Limitations Period.</u>

The Moving Defendants have not (and cannot) cite to a single piece of record evidence suggesting that State Farm knew or should have known of Defendants' unlawful and fraudulent activity during the limitations period.  To the contrary, State Farm alleges that it was not aware that the services rendered and billed by Defendants were unlawful until December 2010 (or later), and that Defendants had concealed their scheme by submitting bills for services that

---

[12]As discussed below, State Farm submits that the only record evidence in the instant case regarding when State Farm knew or should have known of the facts giving rise to this action places the claims at issue squarely within the limitations period.

indicated that the services were lawfully rendered.   [ECF No. 1] at ¶¶ 135, 136, 137. Additionally, the record evidence indicates that:

- State Farm became generally aware that Alvarez was conducting X-ray scans without the Certification from the Department of Health in December 2010 [ECF No. 93-1] at ¶ 3;

- State Farm became generally aware that Ortiz may have been unlawfully employed and/or supervised in early 2012 [ECF No. 93-1] at ¶ 4;

- State Farm became aware of the additional issues regarding Dr. Genao and Dr. Alonso's medical director noncompliance in July and June, 2014, respectively [ECF No. 93-1] at ¶ 5-6.

- State Farm did not become aware that B&A and its Medical Directors were engaged in the fraudulent practice of waiving, or failing to make a good-faith effort to collect, copayments and/or deductibles from its patients until September, 2014. *See De la Noval Aff.* (Ex. 1) at ¶ 7.

Therefore, because the delayed discovery doctrine is applicable to the claims in this case, Defendants cannot satisfy its burden to show that State Farm knew or should have known of the unlawful and inequitable conduct at some time period outside the limitations period. At a minimum, questions of fact remain as to when State Farm knew or should have known and summary judgment must be denied.  *Keller v. Reed*, 603 So. 2d 717, 720 (Fla. 2d DCA 1992) (the question of when a person knew or should have known of the invasion of his or her legal rights is a question for the trier of fact) (*citing Flanagan v. Wagner, Nugent*, 594 So. 2d 776 (Fla. 4th DCA 1992); *Aprile v. Suncoast Schools Fed. Credit Union*, 596 So. 2d 1290 (Fla. 2d DCA 1992)).

### 2.    The Common-Law Equitable Tolling Doctrine.

"The Florida Supreme Court has made it clear that equitable tolling is a legal theory that may operate to deflect the statute of limitations." *Carroll v. TheStreet.com, Inc.*, Case No. 11-81173-Ryskamp, 2014 WL 5474061, *6 (S.D. Fla. July 10, 2014) (citing *Major League Baseball v. Morsani*, 790 So. 2d 1071, 1076 (Fla. 2001) (Florida law provides various independent methods "to deflect the statute of limitations, such as accrual, tolling, **equitable tolling**, and waiver.")); *see also Kugler*, Case No. 11-cv-80051-Hurley, 2011 WL 4389915, at *13 (applying doctrine of equitable tolling to toll statute of limitations on claims, including unjust enrichment, based on a provider's alleged concealment). "Equitable tolling is the doctrine under which plaintiffs may sue after the statutory time period has expired if they have been prevented from

doing so due to inequitable circumstances." *Ellis v. General motors Acceptance Corp.*, 160 F.3d 703, 706 (11th Cir. 1998); *see also Grossman v. Greenberg*, 619 So. 2d 406, 408 (Fla. 4th DCA 1993), *rev. denied*, 629 So. 2d 133 (Fla. 1993).

As set forth above, State Farm alleges and the evidence substantiates that Defendants submitted nearly 5,000 bills to State Farm and represented with each submission that the services rendered were lawful and not fraudulent. Defendants further undertook efforts to conceal the unlawfulness of the services rendered at B&A through false testimony in underlying PIP cases in County Court. *See, e.g.* [ECF No. 118-20] at 17:11-21 (testimony of Dr. Genao in 2012 that "supervised" activities at B&A and ensured all practitioners were properly licensed); [ECF No. 118-21] at 10:6-11:6 (testimony of Dr. Alonso in 2011 that he ensured the technicians at B&A were lawfully licensed). As we now know, this testimony was false.

Additionally, with each submission to State Farm for payment, B&A represented that it possessed a lawfully obtained license from the Florida's Agency for Healthcare Administration ("AHCA"). In order to obtain this license, B&A and its medical director were required to represent that B&A employed a legally compliant medical director to provide day-to-day oversight at B&A and undertake the expressly enumerated statutory duties in § 400.9935, Fla. Stat.  [ECF No. 1] 50-52, 60; [ECF No. 1-2].  However, as set forth above, despite B&A and its medical directors' repeated representations to State Farm that it possessed a valid license from AHCA to operate as a healthcare clinic and bill State Farm for services it provided, B&A's license was obtained through false and misleading statements on the clinic application and change of medical director forms.  *See State Farm Mut. Auto. Ins. Co. v. Med. Serv. Center of Florida, Inc.*, ---F.Supp.3d---, 2015 WL 2170396, *9 (S.D. Fla. 2015) (finding that a clinic license obtained through false and/or misleading statements on the clinic application was void *ab initio*). Accordingly, B&A represented to State Farm it had a valid and appropriate healthcare clinic license, and continued to submit bills to State Farm for payment representing that the services identified therein were lawful and compensable.

State Farm relied on the submission of the CMS 1500 forms by B&A as representations that the services identified were lawfully performed and properly compensable. [ECF No. 1] at ¶ 125-126; s*ee also* De la Noval Aff. (Ex. 1) at ¶ 5. By identifying either the Medical Directors by name (Dr. Genao or Dr. Alonso), or alternatively, by identifying the clinic owner by name (Felipe Aguilar) in Box 31 of the CMS 1500 form, State Farm relied on the representation by B&A and its

Medical Directors that the services were lawfully rendered and compensable. *Id.* at ¶ 5. State Farm further relied upon the representations made by B&A and its Medical Directors that B&A possessed the required clinic licensure to lawfully operate as a licensed health care clinic in Florida.  *Id.* at ¶ 6. Specifically, State Farm relied upon the representations from B&A that it possessed a legal and valid healthcare clinic license.  *Id.* State Farm would not have made these payments had the truth about the non-compliant Medical Directors not been concealed by Defendants B&A, Dr. Genao and Dr. Alonso. *Id.*

The false representations of Defendants to cover up the facts giving rise to State Farm's claims caused State Farm to make payments to Defendants for which they had no entitlement and prevented State Farm from discovering the facts of the fraud.  It would be wholly inequitable under the circumstances to allow Defendants to gain from the deception. At a minimum, a question of fact exists regarding whether Defendants concealed their inequitable and unlawful activity precluding summary judgment. *Walker v. Dunne*, 368 So. 2d 640, 641 (Fla. 1st DCA 1979) (it is a question of fact whether defendant's conduct in concealing his negligence tolled the statute of limitations).

    **D.**    **THE RECORD EVIDENCE CONCLUSIVELY DEMONSTRATES DEFENDANTS WERE ENGAGED IN INSURANCE FRAUD BY WAIVING, OR FAILING TO MAKE ANY GOOD-FAITH EFFORT TO COLLECT, COPAYMENTS OR DEDUCTIBLES FROM THOUSANDS OF PIP INSUREDS.**

As set forth in detail in State Farm's Statement of Undisputed Facts [ECF No. 122], the relevant record evidence establishes that B&A and its Medical Directors (intentionally) made no effort whatsoever to collect a single copayment or deductible from any of the thousands of State Farm insureds at issue in this case.  [ECF No. 122] at ¶¶ 10-18.  Notwithstanding, the Moving Defendants argue they are entitled to summary judgment on State Farm's claims for violations of §817.234, Fla. Stat. because there is purportedly no issue of fact that Defendants waived the copayment or deductible obligations of its patients.  In reality, there is no genuine issue of fact that B&A and its Medical Directors made absolutely no effort to collect a single copayment or deductible from any of the thousands of B&A patients for which it billed *any insurer* for PIP benefits.  [ECF No. 122] at ¶18.

The record evidence makes clear there is no dispute that B&A and its Medical Directors made no effort, much less a "good-faith effort," to collect copayments or deductibles on any one of the nearly 5,000 separate services it billed State Farm for the PIP benefits of its insureds

during the Relevant Time Period. [ECF No. 122] at ¶¶15, 18. In fact, the record reflects that B&A has admitted that it made no effort to charge or collect a single copayment or deductible from any of the thousands of State Farm insureds it has treated since 2007. [ECF No. 122] at ¶¶14-16, 18. Despite the acknowledged application of both co-payments and deductibles to B&A's patients, there is no evidence to support that B&A has ever attempted to collect a copayment or deductible from any PIP insured it has treated from its inception in 2007 through the present. [ECF No. 122] at ¶16-17.

In support of their Motion, the *only* record evidence cited to by the Moving Defendants is a self-serving and conclusory declaration of Felipe Aguilar filed in support of summary judgment. *See* [ECF No. 121-23]. The declaration alleges no details or specific facts regarding any explicit effort undertaken by Defendants to collect copayments or deductibles from its patients and should therefore be disregarded. *Gordon v. Terry*, 684 F.2d 736, 743-44 (11th Cir. 1982) (finding affidavit's conclusory allegations with no specific supporting facts filed in opposition to summary judgment has no probative value). Mr. Aguilar's conclusory declaration directly contradicts his own testimony and the plethora of other testimony and record evidence submitted by State Farm in support of its Motion for Summary Judgment and should be disregarded. *See Van T. Junkins and Associates, Inc. v. U.S. Industries, Inc.*, 736 F.2d 656, 657 (11th Cir. 1984) ("When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.")  This Court has previously rejected this very type of self-serving declaration in opposition to summary judgment, holding it to be "evidence [that] is self-serving and conclusory, and provides little, if any, actual evidence for the Court to consider." *Med. Serv. Center*, ---F.Supp.3d---, 2015 WL 2170396, at *7. Therefore, because all of the record evidence, including Felipe Aguilar's own prior testimony, establishes this legal conclusion to be false, the declaration should be disregarded.

Finally, the Moving Defendants argue in their motion that because they have never been adjudicated guilty of failing to collect copayments and/or deductibles, that "State Farm is not entitled to any relief pursuant to Florida Statute § 817.234(5)."  However, as this Court already held in its Order Denying Motions to Dismiss, State Farm has not alleged a direct cause of action pursuant to §817.234.  [ECF No. 32] at p. 12.  Rather, State Farm has stated a cause of action for

unjust enrichment based on Defendants' inequitable conduct – their admitted failure to attempt to collect deductibles or copayments. *Id*. at fn. 4; *State Farm Fire & Casualty Company v. Silver Star Health and Rehab*, 739 F.3d 579, 584 (11th Cir. 2013) (Florida law recognizes a cause of action for unjust enrichment where, as here, Defendants were conferred and retained a benefit it was not otherwise entitled to in the first place.); Fla. Stat. §627.736(5)(b)(1)(b) ("[a]n insurer is not required to pay a claim or charges for any service or treatment *that was not lawful at the time rendered*.")  Accordingly, the record evidence is devoid of any dispute of material fact that Defendants were engaged in the general business practice of waiving, or failing to make a good-faith effort to collect, copayments and deductibles in violation of §817.234(7)(a), Florida Statutes.

## IV.    CONCLUSION

For all the foregoing reasons, the Moving Defendants' Motion for Summary Judgment should be denied.


Dated: September 14, 2015


By:  /s/ Sandra L. Heller
　　　David I. Spector (Fla. Bar No. 086540)
　　　david.spector@akerman.com
　　　Sandra L. Heller (Fla. Bar No. 037055)
　　　sandra.heller@akerman.com
　　　Nicholas J. Purvis (Fla. Bar No. 054268)
　　　nicholas.purvis@akerman.com
　　　**AKERMAN LLP**
　　　50 North Laura Street, Suite 3100
　　　Jacksonville, Florida 32202
　　　Telephone: (904) 798-3700
　　　Facsimile: (904 798-3730

　　　*Counsel for State Farm Mutual Automobile Insurance Company and State Farm Fire & Casualty Company*

## CERTIFICATE OF SERVICE

This is to certify that on September 14, 2015, the foregoing document is being served this

day on all counsel of record identified on the attached Service List via Electronic Mail and US

Mail.

*/s/Sandra L. Heller*

Sandra L. Heller (Florida Bar No. 037055)

## SERVICE LIST

Munir D. Barakat, Esq.
mdb@barakatlegal.com
BARAKAT LEGAL, P.A.
255 Alhambra Circle
Suite 900
Coral Gables, Florida 33134
786-472-1812 (phone)
786-545-7195 (fax)

*Attorneys for Defendants: B&A Diagnostics, Inc. n/k/a Oasis Medical Center Corp., C. Esteban Genao, M.D., Ernesto Alvarez Velasco and Jose Angel Ortiz Maza*

Michael Coscullela, Esq.
Cosculluela & Marzano
14211 Commerce Way
Suite 300
Miami Lakes, FL 33016-1555
305-828-1909 (phone)
305-503-6795 (fax)
mcosculluela@cmpalaw.com

*Attorneys for Defendant Alex Alonso, M.D.*