**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No. 14-cv-24387-KMM

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY and STATE
FARM FIRE & CASUALTY COMPANY,

       Plaintiff,

v.

B&A DIAGNOSTIC, INC. n/k/a OASIS
MEDICAL CENTER CORP., ESTEBAN GENAO, M.D.,
ALEX ALONSO, M.D., ERNESTO ALVAREZ
VELASCO, and JOSE ANGEL ORTIZ MAZA,

       Defendants.

_____/

## AMENDED ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court upon Plaintiff State Farm Mutual Automobile Insurance Co. and State Farm Fire & Casualty Co.'s (collectively, "State Farm" or "Plaintiff") Motion for Summary Judgment (ECF No. 123) and Defendant Alex Alonso, M.D.'s Motion for Summary Judgment (ECF No. 128) and related responses and replies. The motions are now ripe for review. For the reasons that follow, State Farm's Motion for Summary Judgment is GRANTED.

This case involves unjust enrichment claims by State Farm against B & A Diagnostic, Dr. Esteban Genao, Dr. Alex Alonso, and Ernesto Alvarez Velasco (collectively, the "Defendants"), based on the submission of allegedly illegal and fraudulent claims for X-ray services provided to State Farm's insureds pursuant to the insureds' No-Fault Personal Injury Protection ("PIP")

policy coverage.  State Farm also seeks declaratory relief, stating that it does not owe payment for any outstanding bills that arose from the performance of allegedly unlawful services.

## I.     BACKGROUND

As a threshold matter, the Court places great emphasis upon, and implores the parties to be mindful of, the fact that local rules have "the force of law." *Hollingsworth v. Perry*, 558 U.S. 183, 191 (2010) (quoting *Weil v. Neary*, 278 U.S. 160, 169 (1929)).  The Local Rules expressly caution that "[a]ll material facts set forth in the movant's statement filed and supported as required . . . will be *deemed admitted unless controverted* by the opposing party's statement, provided that the Court finds that the movant's statement is supported by evidence in the record." S.D. Fla. L.R. 56.1(b) (emphasis added).  Local Rule 56.1(b) serves a vital purpose in "help[ing] the court identify and organize the issues in the case." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009).  It also preserves scarce judicial resources by preventing a court from "having to scour the record and perform time-intensive fact searching." *Joseph v. Napolitano*, 839 F. Supp. 2d 1324, 1329 (S.D. Fla. 2012); *see also Borroto v. Geico,* No. 1:14-CV-24659-KMM, 2015 WL 5786740, at *6 n.3 (S.D. Fla. Sept. 30, 2015) (noting that posing such an exacting requirement on courts is "untenable").

Despite Defendants' assertions, rules like Local Rule 56.1(b) serve more than a technical purpose, and are held in great esteem by courts around the country.  *See e.g.*, *Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir. 2008); *Caban Hernandez v. Philip Morris USA, Inc.*, 486 F.3d 1, 7 (1st Cir. 2007) ("Given the vital purpose that such rules serve, litigants ignore them at their peril."); *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994) (endorsing "the exacting obligation these rules impose on a party contesting summary judgment").  Although a failure to comply with the local rules can often result in harsh, if not fatal, outcomes for a party,

such results are "not by calculated choice of t[he] Court."  *Gossard v. JP Morgan Chase & Co*., 612 F. Supp. 2d 1242, 1246 (S.D. Fla. 2009).

Here, neither set of defendants[1] filed an opposition to Plaintiff's Statement of Undisputed Material Facts in compliance with Local Rule 56.1(b).  Nor did the Defendants controvert Plaintiff's statement of facts through factual assertions or citations within their respective Responses to Plaintiff's Motion for Summary Judgment.  *See* (ECF Nos. 134, 135).  Instead, Defendants offered only conclusory and self-serving declarations in an attempt to create a genuine issue of material fact.  Defendants' efforts are unsuccessful.  Conclusory declarations lack any probative value and are insufficient as a matter of law.  *Gordon v. Terry*, 684 F.2d 736, 744 (11th Cir. 1982); *see also Hilburn v. Murata Elects. N. Am., Inc*., 181 F.3d 1220, 1227-28 (11th Cir. 1999) (noting that a "conclusory statement is insufficient to create a genuine issue of a material fact").

In essence, the non-moving parties' failure to comply with Local Rule 56.1(b) presents the Court with "the functional analog of an unopposed motion for summary judgment."  *Reese*, 527 F.3d at 1268.  Although Plaintiff's submitted facts are deemed admitted, this "[C]ourt must still review the movant's citations to the record to determine if there is, indeed, no genuine issue of material fact."  *Mann v. Taser Int'l, Inc*., 588 F.3d 1291, 1303 (11th Cir. 2009); *see also United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101-02 (11th Cir. 2004) ("At the least, the district court must review all of the evidentiary materials submitted in support of the motion for summary judgment.").  This requirement provides the Court an opportunity to address the merits of the motion.  *See Dunlap v. Transamerica Occidental Life Ins. Co.*, 858 F.2d 629, 632 (11th Cir. 1988).

---

[1]   Defendants B & A Diagnostic, Inc, Esteban Genao and Ernesto Alvarez Velasco (collectively "the non-Alonso Defendants") are represented by counsel separate from Dr. Alonso.

With this framework in mind, the following facts are undisputed and supported by the record before this Court.[2]

Defendant B & A Diagnostic, Inc. ("B & A"), is a Florida corporation licensed by Florida's Agency for Health Care Administration ("AHCA"), which operates as a health care clinic and provides X-ray and other diagnostic services to patients in Miami, Florida. Pl.'s Statement of Undisputed Material Facts ¶ 1 (ECF No. 122). B & A submits medical bills to State Farm for X-ray services rendered to State Farm's insureds. *Id.* ¶ 2. Felipe Aguilar, a layperson, is the sole owner of B & A, and is responsible for interviewing and hiring the medical directors for the clinic. *Id.* ¶¶ 8–9.

Defendant Esteban Genao, M.D. served as the statutorily designated Medical Director for B&A from March 21, 2008 through March 31, 2010. *Id.* ¶ 5. Defendant Alex Alonso, M.D. subsequently served as the statutorily designated Medical Director of B & A from April 1, 2010 through the present.[3] *Id.* ¶ 6. From June 2009 through November 30, 2010, Defendant Ernesto Alvarez Velasco was employed by B & A to perform X-ray scans on B & A patients. *Id.* ¶ 4. Likewise, former Defendant Jose Angel Ortiz Maza performed X-ray services for B & A from approximately July 2009 through November 2011. *Id.* ¶ 7.

In approximately June 2009, Alvarez applied for employment with B & A and was interviewed only by Aguilar. *Id.* ¶ 19. No one at B & A instructed Alvarez that he needed a certification from the Florida Department of Health ("DOH") to conduct X-rays lawfully. *Id.* As a result, Alvarez believed that a certification from the American Registry of Radiologic Technicians ("ARRT") was all that was required to conduct X-rays lawfully in Florida. *Id.* ¶ 21.

---

[2] The facts are taken from State Farm's Statement of Undisputed Material Facts and a review of the corresponding record citations and submitted exhibits. (ECF No. 122).

[3] State Farm's claims against all Defendants are limited to the period between March 21, 2008 and November 16, 2011 (the "Relevant Time Period").

However, Alvarez admitted that the ARRT website expressly indicates that the State is the appropriate licensing authority and ARRT certification is separate from the radiological technician licensing process. *Id.* Alvarez thus acknowledged that he needed to provide more than his ARRT certification to the Florida DOH in order to obtain his license from the State. *Id.* Included among the additional required items Alvarez needed to submit for certification were proof of educational qualifications, proof of completion of an HIV course, and proof that Alvarez passed a knowledge-based exam. *Id.* According to Alvarez's application to the Florida DOH, Alvarez did not complete the required HIV course until October 6, 2010. *Id.* ¶ 28.

Dr. Alonso never verified whether Alvarez was properly certified by the Florida DOH. *Id.* at ¶ 26. Once it was discovered that Alvarez lacked certification in October 2010, no one at B & A instructed Alvarez to discontinue performing X-rays. *Id.* ¶¶ 27, 29. State Farm became generally aware of the issue of Alvarez's lack of certification in December 2010. *Id.* ¶ 30. Alvarez signed a "Disclosure and Acknowledgement Form" for each X-ray he performed upon a State Farm insured prior to November 30, 2010 indicating that he was the one who performed the technical component of the X-ray. *Id.* ¶ 25.

On April 22, 2005, Ortiz received his certification from the State of Florida as a Basic Machine Operator ("BMO"). *Id.* ¶ 32. At some point in 2007, Ortiz became an employee of B & A after an interview with Aguilar. *Id.* ¶ 33. Ortiz was employed full-time and continuously at B & A from 2007 through September or October 2013. *Id.* Ortiz's primary duty was to perform X-ray scans, and he would typically perform between two and six X-rays daily. *Id.* ¶ 40.

During Ortiz's employment, B & A had no rules or policies requiring a medical doctor to be present at the clinic when Ortiz was conducting X-ray scans. *Id.* ¶ 41. Ortiz routinely conducted X-rays at B & A while there was no licensed medical doctor present. *Id.* For each X-ray scan that Ortiz performed at B & A, Ortiz signed the appropriate disclosure form indicating

that he was the individual that performed the technical component of the X-ray.  *Id.* ¶ 43.  State Farm first became aware of Ortiz's unlawful X-ray services in early 2012.  *Id.* ¶ 44.

Throughout his time as Medical Director, Dr. Genao never entered into a written Medical Director agreement with B & A.  *Id.* ¶ 46.  Genao remained unaware of the fact that Medical Directors have particular statutory obligations under Florida law until after he left B & A in April 2010.  *Id.* ¶ 47.  In his capacity as Medical Director, Genao never verified the licensure of any technicians at B & A and was generally unaware of his obligation to ensure proper certification.  *Id.* ¶¶ 23, 48.  In fact, Genao admitted he did not "check into those things" and indicated that he relied on the word of an MRI technician that things were "safe" at B & A.  *Id.* ¶ 23.  Genao was also unaware of the statutory requirements for a clinic or a hospital to lawfully employ a BMO like Ortiz.  *Id.* ¶ 51.

Genao was physically present at B & A approximately once every one or two weeks during his tenure as Medical Director.  *Id.* ¶ 38.  Consonant with this limited contact, Genao did not perform any of the day-to-day operations identified on the "Job Description for Medical Director" that was submitted to the AHCA.  *Id.* ¶ 50.  Genao also did not play any role in the hiring or interviewing of technicians and had no input on their work schedule.  *Id.* ¶ 52.

As B & A's Medical Director, Genao also did not conduct systematic reviews of clinic billings to ensure the billings were lawful as required by Section 400.9935 of the Florida Statute.  *Id.* ¶ 49.  Additionally, Genao never reviewed Section 400.9935 and admitted that he is unfamiliar with its contents.  *Id.* ¶ 47.  Genao merely assumed the bills submitted were lawful because, as he testified in his deposition, "billing was just billing."  *Id.* ¶ 49.  Genao also took no part in assuring that co-payments or deductibles were collected from patients as required by law.  *Id.* ¶¶ 10, 53.  Genao had no knowledge as to whether there were any attempts, or actual

collections, by B & A, of co-payments and deductibles from B & A patients whose PIP benefits were billed.  *Id.* ¶ 10.

Dr. Alonso became the Medical Director of B & A in April 2010.  *Id.* ¶ 54.  Dr. Alonso is unable to recall entering into a written Medical Director Agreement prior to March 15, 2011.  *Id.* ¶ 56.  Dr. Alonso did not participate in the hiring or interviewing of technicians at B & A.  *Id.* ¶ 55.  Like Genao, Dr. Alonso never verified the licensure of any technician at B & A, nor did he make any attempt to contact the Florida DOH to determine what certification was necessary to practice radiologic technology in Florida.  *Id.* ¶¶ 57, 59.

Dr. Alonso admitted that the X-rays Alvarez performed at B & A from April 1, 2010 through November 30, 2010, were unlawful and noncompensable.  *Id.* ¶¶ 30, 60.  Dr. Alonso also acknowledged that Alvarez was unqualified to apply for certification as a radiologic technician until he completed the required HIV course in October 2010.  *Id.*  Regarding his interaction with Ortiz, Dr. Alonso admitted he did not know when Ortiz would be working at B & A and he never spoke to Ortiz about the need to be directly supervised by a licensed practitioner.  *Id.* ¶ 61.  Instead, up until June of 2014, Dr. Alonso believed that BMO's could work for any diagnostic facility and could be supervised by mere telephone contact.  *Id.* ¶ 62.

Dr. Alonso admitted that as the Medical Director of B & A he was required by law to ensure that all bills B & A submitted were rendered in accordance with Florida law.  *Id.* ¶ 65.  Further, Dr. Alonso acknowledged in his deposition testimony that it would be a violation of his Medical Director statutory duties to allow a bill to go out which contains charges for services performed in violation of Florida law.  *Id.*  Dr. Alonso admitted that the bills B & A sent out containing charges for X-ray services performed by Ortiz were in violation of Florida law.  *Id.* ¶¶ 44, 63.  Dr. Alonso further admitted that he failed to comply with his statutory Medical Director duties to ensure Ortiz had the appropriate certification and that the bills for the X-rays performed

7

by Ortiz were unlawful. *Id.* ¶ 44. Dr. Alonso also had no involvement with any efforts to collect co-payments and deductibles from B & A's patients whose PIP benefits were being billed. *Id.* ¶ 11. During his deposition, Dr. Alonso testified that he had no awareness of whether any statutory obligations existed for clinics, like B & A, to collect co-payments and deductibles from patients. *Id.* ¶ 12.

## II. LEGAL STANDARD

Summary judgment is appropriate where there is "no genuine issue as to any material fact [such] that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed R. Civ. P. 56. A dispute about a material fact is genuine if the evidence is such that a reasonable fact-finder could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Speculation or conjecture cannot create a genuine issue of material fact sufficient to defeat a well-supported motion for summary judgment. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).

The moving party shoulders the initial burden of showing the absence of a genuine issue as to any material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). In deciding whether the movant has met this burden, "[t]he court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the non-moving party." *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001). Once the moving party satisfies its initial burden, the non-moving party must come forward with evidence showing a genuine issue of material fact that precludes summary judgment. *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. "If reasonable minds could differ on any inferences arising from undisputed facts, summary judgment should be denied." *Twiss v. Kury*,

8

25 F.3d 1551, 1555 (11th Cir. 1994).  But if the record, taken as a whole, cannot lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment is proper.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.    DISCUSSION

State Farm moves for summary judgment on Counts I (Unjust Enrichment) and II (Declaratory Relief) of its Complaint.  *See* Pl.'s Mot. for Summ. J. (ECF No. 123).  State Farm asserts that there is no genuine issue of material fact that B & A's Medical Directors, Drs. Genao and Alonso, failed to perform the basic requirements of a Medical Director, and each are responsible for a host of violations of Florida law.  Specifically, State Farm argues that there is no genuine issue of material fact that Drs. Genao and Alonso failed to (1) ensure that all health care practitioners providing health care services to patients maintained active and appropriate certification or licensure for the level of care being provided; (2) agree in writing to accept legal responsibility for the clinic as the Medical Director; (3) conduct systematic review to ensure that billings are not fraudulent; and (4) conduct systematic review to ensure that billings are not unlawful.[4]  *Id.* at 17.  Accordingly, State Farm maintains that because the charges at issue during the Relevant Time Period were unlawful, noncompensable, and unenforceable, State Farm is entitled to summary judgment on its claims to recover $1,478,848.40 in PIP benefits paid to Defendants.  State Farm further seeks a declaration that it is not obligated to pay approximately $697,970 in bills that remain unpaid for services rendered during the Relevant Time Period.

---

[4]  Alternatively, State Farm argues that no genuine issue of material fact exists that B & A did not operate lawfully during the Relevant Time Period because it was engaged in the general business practice of waiving, or failing to collect, co-payments and deductibles from its insureds.

Defendant Alex Alonso, M.D. cross-motioned for summary judgment (ECF No. 128).[5]
In the motion, Dr. Alonso only offers three affirmative defenses supporting dismissal of State
Farm's claims.    First, Dr. Alonso argues the doctrine of *res judicata* bars Plaintiff from
proceeding with the current litigation.    Second, Dr. Alonso argues that Plaintiff is collaterally
estopped from bringing the current suit against him.    Lastly, Dr. Alonso maintains that any of
Plaintiff's unjust enrichment claims for payment amounts incurred prior to November 19, 2010
are barred by the applicable statute of limitations.

### A.    Legal Framework

Florida's Motor Vehicle No-Fault Law ("Florida's No-Fault Law") requires that Florida
automobile insurance policy holders have PIP coverage to provide victims of motor vehicle
accidents benefits for reasonable, necessary, related and lawful treatment, without regard to fault.
Fla. Stat. §§ 627.730–627.7405.  The law sets forth what benefits are covered under PIP, stating
in pertinent part that "the medical benefits shall provide reimbursement only for such services
and  care  that  are  lawfully  provided,  supervised,  ordered  or  prescribed."    Fla. Stat. §
627.736(1)(a).  "An insurer is not required to pay a claim or charges for any service or treatment
that  was  not  lawful  at  the  time  rendered."    Fla. Stat. § 627.736(5)(b)(1)(b).    Additionally, a
service provider may only charge an insurer "a reasonable amount" for the services provided.[6]
Fla. Stat. § 627.736(5)(a).

---

[5]    On August 28, 2015, the non-Alonso Defendants also filed a Motion for Summary
Judgment.  (ECF No. 121).  However, the motion was filed without a supporting statement of
undisputed material facts as required by the local rules.  *See* S.D. Fla. L.R. 56.1.  Accordingly,
the Court denied the motion on the grounds that without the required statement of undisputed
material facts, the Court did not have an "appropriate basis" to determine summary judgment.
(ECF No. 148).  Other courts have taken similar action. *See e.g.*, *Ocean's 11 Bar & Grill, Inc. v.
Indem. Ins. Corp. RRG*, No. 11-61577-CIV, 2012 WL 2675435, at *3 (S.D. Fla. July 6, 2012).

[6]    In determining a reasonable amount, "consideration may be given to evidence of usual
and customary charges and payments accepted by the provider . . ." Fla. Stat. § 627.736(5)(a).

The statutory definition of "'lawful' or 'lawfully' means in substantial compliance with all relevant applicable criminal, civil, and administrative requirements of state and federal law related to the provision of medical services or treatment." Fla. Stat. § 627.732(11). Florida's No-Fault Law also provides that "[n]o statement of medical services may include charges for medical services of a person or entity that performed such services without possessing the valid licenses required to perform such services." Fla. Stat. § 627.736(5)(d). Insurers are not required to pay a claim or charges "[w]ith respect to a bill or statement that does not substantially meet the applicable requirements of paragraph (d)." Fla. Stat. § 627.736(5)(b)(1)(d).

Florida's Health Care Clinic Act ("HCCA") makes it unlawful for health care clinics to operate without a license from AHCA. Fla. Stat. § 400.991. The HCCA also requires that all clinics which are owned by non-licensed individuals must "appoint a [M]edical [D]irector who shall agree in writing to accept legal responsibility" for various activities identified in the HCCA. Fla. Stat. § 400.9935(1). One requirement is that the Medical Director must ensure that all practitioners have active, unencumbered, and appropriate licenses and certifications for the level of care being provided. Fla. Stat. § 400.9935(1)(b), (d). The Medical Director also has a statutory obligation to ensure that any billing for services rendered by the clinic do not contain charges that are fraudulent or unlawful, and the Medical Director must conduct "systematic reviews of clinic billings" to accomplish this task. Fla. Stat. § 400.9935(1)(g). Any charge submitted on behalf of a clinic whose Medical Director is in violation of the aforementioned statutory requirements "is an unlawful charge and is noncompensable and unenforceable." Fla. Stat. § 400.9935(3).

---

Further, Florida law provides that "such a charge may not exceed the amount the person or institution customarily charges for like services or supplies." *Id.* This is consistent with a provision of the Florida Motor Vehicle Reform Act ("Reform Act") which makes it illegal for a provider to engage in the general business practice of waiving, or failing to make a good-faith effort to collect, co-payments and deductibles from PIP patients. *See* Fla. Stat. § 817.234(7)(a).

The Radiological Personnel Certification Act ("RPCA") provides the legal framework for the use of radiation and radiation-emitting equipment in Florida. Fla. Stat. §§ 468.3001 *et seq.* It is unlawful under the RPCA for a person to use radiation, practice radiologic technology, or perform any of the duties of a radiologic assistant unless they are "the holder of a certificate . . . and [are] operating under the direct supervision or general supervision of a licensed practitioner in each particular case." Fla. Stat. § 468.302(1)(b). For purposes of the RPCA, "certificate" is defined as the "certification granted and issued by the [Florida DOH]." Fla. Stat. §§ 468.301(3), (6). The certification process requires an applicant to meet several criteria including the submission of an application fee and proof of completion of certain educational requirements and courses. Fla. Stat. § 468.304. Practicing radiologic technology without an active certificate from the Florida DOH is a criminal offense. Fla. Stat. § 468.311(1).

A Basic Machine Operator ("BMO") is defined as "a person who is employed by a licensed practitioner to perform certain radiographic functions . . . under the direct supervision of that practitioner." Fla. Stat. § 468.301(1). The RCPA further restricts a BMO to the performance of "general diagnostic radiographic and general fluoroscopic procedures . . . under the direct supervision and control of a licensed practitioner in that practitioner's office." Fla. Stat. § 468.302(3)(a). Under the RCPA, "direct supervision" requires "the physical presence of the licensed practitioner for consultation and direction of the actions of the" BMO as well as the licensed practitioner's assumption of "legal liability for the services rendered" by the BMO. Fla. Stat. § 468.301(7).

## B.   The Services Rendered By Defendants During the Relevant Time Period Were Unlawful and Noncompensable

It is undisputed that Drs. Alonso and Genao failed to meet their statutory obligations as Medical Directors of B & A. As an initial matter, neither Alonso nor Genao assumed legal

responsibility during the Relevant Time Period for the clinic as mandated by the HCCA.  The undisputed record is also clear that Alonso and Genao each failed to ensure that all health care practitioners providing health care services to B & A patients were appropriately licensed and certified in accordance with Florida law.  Additionally, the record evidence demonstrates that Drs. Alonso and Genao failed to provide the necessary oversight of B & A's clinic billings and neither Medical Director performed their daily supervisory requirements.  Considering the record evidence as a whole, the Court finds no rational trier of fact could find that Drs. Alonso and Genao complied with the statutory obligations of a Medical Director.  Accordingly, none of the services rendered to State Farm's insureds during the Relevant Time Period were lawful or compensable.[7]

The Court also finds that no genuine issue of material fact exists regarding the unlawful nature of the X-rays conducted by Alvarez during the Relevant Time Period.  The undisputed record evidence provides that (1) Alvarez lacked appropriate certification to perform X-rays at B & A; (2) Alvarez continued to perform X-rays even after it was discovered he lacked certification; and (3) each X-ray performed by Alvarez during the Relevant Time Period was a criminal act and noncompensable.

Similarly, no rational trier of fact could find that the X-ray services performed by Ortiz during the Relevant Time Period were lawful.  It is undisputed that (1) Ortiz was only certified as a BMO; (2) Ortiz was not employed by a licensed practitioner; (3) no licensed practitioner directly supervised the X-rays Ortiz performed; (4) no attempts were made to directly supervise

---

[7]  An additional ground exists for granting Plaintiff's motion.  It is undisputed that B & A and its Medical Directors failed to make a good-faith effort to collect co-payments or deductibles from State Farm's insureds on any of the services it billed State Farm for during the Relevant Time Period.  *See* ECF No. 122 at ¶¶ 10-12, 47, 53.  Failure to make a good-faith effort to collect co-payments is "insurance fraud" that renders the charges submitted to State Farm during the Relevant Time Period unlawful and noncompensable.  *See* Fla. Stat. §§ 627.736(5)(b)(1)(b), 817.234(7)(a).

Ortiz; and (5) the X-rays performed by Ortiz during the Relevant Time Period were unlawful and noncompensable.

1.    Defendants Were Unjustly Enriched As a Matter of Law

Under Florida law, the elements of a cause of action for unjust enrichment are: "(1) plaintiff conferred a benefit on a defendant who has knowledge of that benefit; (2) defendant accepted and retained the benefit and (3) under the circumstances, it would be inequitable for the defendant to retain the benefit without paying for it." *State Farm Mut. Auto. Ins. Co. v. Kugler*, No. 11-80051, 2011 WL 4389915, at \*12 (S.D. Fla. Sept. 21, 2011) (citing *Fito v. Attorney's Title Ins. Fund, Inc.*, 83 So. 3d 755, 758 (Fla. 3d DCA 2011)); *see also Tooltrend, Inc. v. CMT Utensili, SRL,* 198 F.3d 802, 805 (11th Cir. 1999). Notably, this cause of action exists "'to prevent the wrongful retention of a benefit, or the retention of money or property of another, in violation of good conscience and fundamental principles of justice or equity.'" *State Farm Fire & Cas. Co. v. Silver Star Health & Rehab*, 739 F.3d 579, 584 (11th Cir. 2013) (quoting *Butler v. Trizec Props., Inc.*, 524 So. 2d 710, 711 (Fla. 2d DCA 1988)).

In the automobile liability insurance context, courts have found a cause of action for unjust enrichment appropriate when a service provider "accepts and retains benefits that it is not legally entitled to receive in the first place." *Silver Star*, 739 F.3d at 584; *State Farm Mut. Auto. Ins. Co. v. Med. Serv. Ctr. of Florida, Inc.*, No. 14-CV-20625-KMM, 2015 WL 2170396, at \*9 (S.D. Fla. May 8, 2015) (granting summary judgment in favor of insurer and holding that an insurer can refuse payments for services unlawfully rendered as "it would be inequitable to allow Defendants to retain those benefits"); *State Farm Mut. Auto. Ins. Co. v. Altamonte Springs Diagnostic Imaging, Inc.*, No. 611-CV-1373-ORL-31GJ, 2011 WL 6450769, at \*5 (M.D. Fla. Dec. 21, 2011). It is widely accepted that "a defendant is not required to individually receive payments in order for a cause of action for unjust enrichment to exist." *State Farm Mut. Auto.*

14

*Ins. Co. v. B & A Diagnostic, Inc*., No. 14-CV-24387-KMM, 2015 WL 2217312, at *7 (S.D. Fla.

Apr. 6, 2015) (citing *State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc*., 427 F.

App'x 714, 722-23 (11th Cir. 2011)).

Here, the Court finds that the undisputed record establishes each of the elements of unjust

enrichment and concludes that summary judgment is warranted in State Farm's favor.[8]  First, the

Court finds that there is no genuine issue of material fact that State Farm conferred a benefit on

B & A in the amount of $1,478.848.40 for the services identified in the Complaint, and that B &

A voluntarily accepted and retained that benefit.  It is also undisputed that Alvarez, Dr. Alonso,

and Dr. Genao received the benefit of the illegal and improper payments made to B & A in the

form of salaries and additional payments.  Florida law expressly states that a provider can refuse

payment for services unlawfully rendered.   Fla. Stat. § 627.736(5)(b)(1)(b).   Based on

Defendants' unlawful conduct, State Farm paid claims which it was statutorily entitled to deny.

Allowing Defendants to retain those benefits under these factual circumstances would violate all

principles of equity.

2.    <u>State Farm is Entitled to Declaratory Relief</u>

Florida law also provides insurers, like State Farm, the ability to "pursue a declaratory

action which requires a determination of the existence or nonexistence of a fact upon which the

insurer's obligations under an insurance policy depend."  *Higgins v. State Farm Fire & Cas. Co*.,

894 So. 2d 5, 12 (Fla. 2004); *see also Med. Serv. Ctr.*, 2015 WL 2170396, at *9.  Courts find this

remedy appropriate when an insurer seeks to be excused from making payments to a clinic that

operates unlawfully.  *See Silver Star*, 739 F.3d at 584; *Med. Serv. Ctr.*, 2015 WL 2170396, at *9.

The record is clear that Defendants have engaged in unlawful conduct in a variety of

ways.  As a result, there is no genuine issue of material fact regarding whether the services for

---

[8]  The Court addresses Defendants' various affirmative defenses below.

which Defendants submitted bills to State Farm were lawful and compensable during the Relevant Time Period. Accordingly, the Court finds that a declaration is warranted confirming that State Farm is not obligated to pay Defendants the amount of Defendants' outstanding invoices for any unlawful and noncompensable services provided to State Farm's insureds.

### C.   Defendant Alex Alonso, M.D.'s Motion for Summary Judgment

Dr. Alonso's Motion for Summary Judgment rests on three affirmative defenses: (1) *res judicata* (claim preclusion), (2) collateral estoppel (issue preclusion), and (3) statute of limitations.[9] Regarding the first two affirmative defenses, Dr. Alonso argues that the claims and issues raised in State Farm's Complaint were fully litigated before the Honorable Ursula Ungaro in a prior action (the "2013 Action").[10] For his third affirmative defense, Dr. Alonso argues that any claims of unjust enrichment for payments he received prior to November 19, 2010 are barred by the relevant statute of limitations.

State Farm argues that Dr. Alonso cannot viably assert *res judicata* as a defense based on the terms of the 2013 Settlement Agreement, and the fact that Dr. Alonso was not a party to the 2013 Action. Similarly, State Farm asserts that Dr. Alonso's collateral estoppel defense must fail as a result of the express terms and conditions of the 2013 Settlement Agreement. Finally,

---

[9]   The non-Alonso Defendants, in response to State Farm's Motion for Summary Judgment, also raise the affirmative defenses of statute of limitations and *res judicata*. *See* ECF No. 134. The non-Alonso Defendants' arguments in support of their affirmative defenses originate from the same factual basis as those asserted by Dr. Alonso. That is, the non-Alonso Defendant's also argue that Plaintiff's cause of action is barred by a four year statute of limitations and that the results of a prior action have preclusive effect. Therefore, the Court's analysis on these issues is equally applicable to the non-Alonso Defendants where relevant.

[10]   In 2013, State Farm Mutual sued B & A and Alvarez in the case of *State Farm Mutual Automobile Insurance Co. v. B & A Diagnostic, et al.*, No. 13-cv-24393-UU (S.D. Fla. 2013). The case was voluntarily dismissed with prejudice as a result of a settlement agreement (the "2013 Settlement Agreement") between the parties. *See* (ECF 121-1).

State Farm argues that Dr. Alonso's statute of limitations defense is tempered by the delayed discovery and equitable tolling doctrines.

### 1.     _Res judicata_ (Claim Preclusion)

As this Court previously recognized, the doctrine of _res judicata_ serves as a bar to subsequent litigation only when there is "(1) identity of the thing sued for, (2) identity of the cause of action, (3) identity of persons and parties to the action, and (4) identity of the quality or capacity of the person for or against whom the claim is made." _State Farm Mut. Auto. Ins. Co. v. B & A Diagnostic, Inc_., No. 14-CV-24387-KMM, 2015 WL 2217312, at *5 (S.D. Fla. Apr. 6, 2015) (quoting _Saboff v. St. John's River Water Mgmt. Dist_., 200 F.3d 1356, 1360 (11th Cir. 2000)).   Where parties consent to a voluntary dismissal of a complaint with prejudice, "a somewhat modified form of _res judicata_ applies to the written settlement agreement upon which such dismissal is predicated."   _Norfolk S. Corp. v. Chevron, U.S.A., Inc_., 371 F.3d 1285, 1291 (11th Cir. 2004).

A court's analysis under these circumstances requires a focus on the settlement agreement between the parties.   _Id._ at 1289 ("In determining the res judicata effect of an order of dismissal based upon a settlement agreement, [courts] should also attempt to effectuate the parties' intent.   The best evidence of that intent is, of course, the settlement agreement itself."). In fact, the scope of the preclusive effect of a voluntary dismissal based on settlement "should not be determined by the claims specified in the original complaint, but instead by the terms of the Settlement Agreement, as interpreted according to traditional principles of contract law."   _Id._ Accordingly, a court should "look to the agreement itself to determine what claims the parties intended to be finally and forever barred by the dismissal."   _Ruple v. Hartford Life & Acc. Ins. Co_., 340 F. App'x 604, 610 (11th Cir. 2009).   Courts often rely upon the release language in a settlement agreement to determine the scope of claims subject to _res judicata_.   _Norfolk_, 371 F.3d

at 1290; *Harty v. Ehden, N.V.*, No. 12-CV-14087-KMM, 2012 WL 2312044, at *2 (S.D. Fla. June 18, 2012) (concluding that release agreement barring all future claims "constitute[d] a prior judgment on the merits" for purposes of *res judicata*).

Dr. Alonso's *res judicata* argument is threefold and centers on the essential elements of that affirmative defense.  First, Dr. Alonso argues State Farm's claims are barred as a court of competent jurisdiction previously entered a final judgment on the merits between identical parties.  Second, Dr. Alonso asserts that State Farm's claims are barred as the two cases involve the same causes of action.  Finally, Dr. Alonso rests this affirmative defense on the argument that he was in privity with B & A or on the notion that State Farm's claims against him and his co-defendants could have been brought at the time of the initial complaint.

Dr. Alonso's argument fails to consider the important distinction between the *res judicata* effect of an earlier judgment and that of a settlement agreement.  The record is clear that the parties jointly and voluntarily dismissed with prejudice the 2013 Action pursuant to a settlement agreement that covered certain claims.  In relevant part, the 2013 Settlement Agreement states:

> The Parties will dismiss with prejudice all claims and counterclaims filed against the other party in the case styled <u>State Farm Mutual Automobile Insurance Company v. B & A Diagnostic, Inc. n/k/a Oasis Medical Center Corp., and Ernesto Alvarez Velasco</u>, Case No. 1:13-cv-24393-UU pending in the United State District Court, Southern District of Florida pertaining to those damages identified on Exhibits "E" and "J" to the Amended Complaint.
>
> . . .
>
> Notwithstanding the foregoing, the Parties collectively expressly acknowledge and agree that this agreement has no effect on any rights the Parties, or any non-party, may have pertaining to any other dispute, claims, damages, charges or causes of action which any entity may in the future pursue.

Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. (ECF No. 140).  Employing traditional principles of contract law, the Court finds that the parties' intent in the 2013 Settlement Agreement was clear.  The voluntary dismissal centered on only those damages identified on

Exhibits "E" and "J" of the Amended Complaint in the 2013 Action.  As Plaintiff correctly states, none of the claims in this case are duplicative of those gaining preclusive effect by way of the 2013 Settlement Agreement.  Moreover, the express language of the release agreement is narrowly tailored to only apply to damages identified on Exhibits E and J and does not serve as a universal bar to all future claims by either party.  Because State Farm's claims fall squarely outside the terms of the 2013 Settlement Agreement, they are not subject to *res judicata*.  Dr. Alonso has also failed to meet his burden on his remaining *res judicata* arguments.[11]

### 2.   Collateral Estoppel (Issue Preclusion)

While *res judicata* acts as a bar to the relitigation of claims, "collateral estoppel precludes the relitigation of an issue that has already been litigated and resolved in a prior proceeding." *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1359 (11th Cir. 1998).  To invoke collateral estoppel, a party must establish the following essential elements:

> (1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior suit; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding.

*I.A. Durbin, Inc. v. Jefferson Nat. Bank*, 793 F.2d 1541, 1549 (11th Cir. 1986).  Like *res judicata*, when a judgment dismissing an action with prejudice is based upon a settlement agreement between the parties, it is the express intent of the parties that is the determining factor

---

[11]   Dr. Alonso's argument that he was in privity with B & A for purposes of the 2013 Action is unavailing.  It is widely recognized that the term "privity" is not limited in scope to a traditional contractual relationship, but instead is more broadly understood as "a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within the res judicata."  *United States v. Manning Coal Corp.*, 977 F.2d 117, 121 (4th Cir. 1992) (quoting *Bruszewski v. United States*, 181 F.2d 419, 423 (3d Cir.1950) (Goodrich, J., concurring)).  As a nonparty to the 2013 Action, Dr. Alonso can assert nonparty preclusion only if the facts show that one of the limited exceptions to the rule against nonparty preclusion is met.  *See Taylor v. Sturgell*, 553 U.S. 880, 894-95 (2008).  There is no evidence that any of the *Sturgell* exceptions apply to Dr. Alonso.

whether the judgment is given collateral estoppel effect.  *Norfolk*, 371 F.3d at 1288; *see also Richardson v. Alabama State Bd. of Educ.*, 935 F.2d 1240, 1245 (11th Cir. 1991).  The Eleventh Circuit has held that "a consent judgment cannot constitute collateral estoppel unless the party pleading collateral estoppel proves from the record of the prior case or through extrinsic evidence that the parties intended the consent judgment to operate as a final adjudication of a particular issue." *Balbirer v. Austin*, 790 F.2d 1524, 1528 (11th Cir. 1986).  Generally, matters dismissed on the basis of a settlement agreement do not support collateral estoppel because the purpose of settlement is to avoid the actual litigation of an issue.  *Arizona v. California*, 530 U.S. 392, 414 (2000) ("[S]ettlements ordinarily occasion no issue preclusion . . . unless it is clear . . . that the parties intend their agreement to have such an effect."); *Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1504 (11th Cir. 1990) (citation omitted).

Dr. Alonso argues that each of the elements for collateral estoppel are met here.  In response, Plaintiff asserts that it is clear that the parties had no intention for the 2013 Settlement Agreement to provide any preclusive effect to any issues in subsequent litigation.  Supporting this contention, Plaintiff notes that the 2013 Settlement Agreement expressly acknowledges that the parties did not intend the dismissal by Judge Ungaro to constitute a final judgment on any issue.  Additionally, Plaintiff argues that Dr. Alonso cannot establish that any of the issues before this Court were actually litigated or critical and necessary to the judgment in the 2013 Action.

The Court finds the language of the 2013 Settlement Agreement clear that the parties had no intention for the agreement to operate as a final adjudication of any particular issue.  Moreover, none of the issues before the Court are the same as those disposed of through the 2013 Settlement Agreement.  In pertinent part, the unambiguous language of the agreement expressly states that the "Settlement Agreement shall not infer any admission by either State Farm or B & A and State Farm acknowledges that, although B & A is entering into this Settlement

Agreement, there has been no admission by B & A of the wrongdoing alleged in State Farm's Amended Complaint."  (ECF No. 121-1).  The Court finds the language of the 2013 Settlement Agreement represents a prime example of a situation where, pursuant to a settlement agreement between parties, there has been no judicial decision on the merits, and thus collateral estoppel does not apply.  *Tampa Bay Water v. HDR Eng'g, Inc.*, 731 F.3d 1171, 1182 n.8 (11th Cir. 2013); Restatement (Second) of Judgments § 27 cmt. e (1982).

### 3.   Statute of Limitations

Finally, Dr. Alonso asserts that the relevant statute of limitations bars State Farm's unjust enrichment claims.  There is no specific statute of limitations for a claim of unjust enrichment in Florida.  *See* Fla. Stat. § 95.11.  Instead, courts apply various limitations periods based on the nature of the underlying allegations.  *Grove Isle Ass'n, Inc. v. Grove Isle Assocs., LLLP*, 137 So. 3d 1081, 1094 (Fla. 3d DCA 2014); *Beltran v. Vincent P. Miraglia, M.D., P.A.*, 125 So. 3d 855, 859 (Fla. 4th DCA 2013); *Blackburn v. Bartsocas*, 978 So. 2d 820, 823 (Fla. 4th DCA 2008) (applying two year limitations period).  Here, State Farm's claims for unjust enrichment are based on fraud with a corresponding statute of limitations of four years.  Fla. Stat. § 95.11(3)(j). According to Dr. Alonso, Plaintiff is legally barred from seeking any relief on claims that arose prior to November 19, 2010.  Plaintiff counters this assertion by arguing that both the delayed discovery and equitable tolling doctrines are applicable.

As the party seeking to assert an affirmative defense, it is undisputed that the burden to establish the essential elements of the statute of limitations defense lies with Dr. Alonso.  *Int'l Stamp Art, Inc. v. U.S. Postal Serv.*, 456 F.3d 1270, 1274 (11th Cir. 2006) (noting that when a movant "is asserting an affirmative defense, it must establish that there is no genuine issue of material fact as to any element of that defense"); *see also Office of Thrift Supervision v. Paul*,

985 F. Supp. 1465, 1470 (S.D. Fla. 1997) ("The reason is that the defendant bears the burden of proof on his affirmative defenses at trial.").

Under Florida law, the general rule is that "[a] cause of action accrues when the last element constituting the cause of action occurs." Fla. Stat. § 95.031.  However, circumstances can arise that necessitate either delaying accrual, *see Rodriguez v. Favalora*, 11 So. 3d 393, 395 (Fla. 3d DCA 2009)*,* or otherwise tolling the relevant statute of limitations.  *Grossman v. Greenberg*, 619 So. 2d 406 (Fla. 3d DCA 1993) (statute of limitations is tolled where defendant has engaged in fraudulent concealment).  In a cause of action for unjust enrichment, the delayed discovery doctrine and the doctrine of equitable tolling have been recognized as an appropriate reference for "the perimeters of th[e] limitations period."  *State Farm Mut. Auto. Ins. Co. v. Kugler*, No. 11-80051, 2011 WL 4389915, at *13 (S.D. Fla. Sept. 21, 2011).

The delayed discovery doctrine is a well-established statutory exception in Florida and "generally provides that a cause of action does not accrue until the plaintiff either knows or reasonably should know of the tortious act giving rise to the cause of action."  *Hearndon v. Graham*, 767 So. 2d 1179, 1184 (Fla. 2000).  The doctrine, as codified, provides in relevant part that "[a]n action founded upon fraud" accrues when "the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence."  Fla. Stat. § 95.031(2)(a).  Thus, a plaintiff must initiate an action "founded upon fraud" within four years of discovering the facts underlying the action or within four years of when those facts should have been discovered with diligence.

Under the common law doctrine of equitable tolling, a plaintiff "may sue after the statutory time period has expired if they have been prevented from doing so due to inequitable circumstances."  *Ellis v. Gen. Motors Acceptance Corp.*, 160 F.3d 703, 706 (11th Cir. 1998).  In Florida, the doctrine supports the interests of justice by preserving "a plaintiff's right to assert a

meritorious claim when equitable circumstances have prevented a timely filing." *Machules v. Dep't of Admin.*, 523 So. 2d 1132, 1134 (Fla. 1988). The Florida Supreme Court has explained that equitable tolling is generally "applied when the plaintiff has been misled or lulled into inaction, has in some extraordinary way been prevented from asserting his rights, or has timely asserted his rights mistakenly in the wrong forum." *Id.*

The Court finds support for the application of both doctrines in the undisputed record evidence. The central thrust of State Farm's allegations is that Defendants falsely represented that the services B & A provided were lawful and compensable. Compl. (ECF No. 1) at ¶¶ 124–127. As an action clearly "founded upon fraud," State Farm's ability to overcome the four year statute of limitations rests on when State Farm discovered, or reasonably should have discovered, Defendants' unlawful conduct. Defendants have not offered any factual support suggesting that State Farm was aware of Defendants' unlawful conduct at a point in time that would necessitate dismissal of State Farm's claims. Instead, the undisputed record evidence before the Court indicates that State Farm became aware of: (1) Alvarez's unlawful performance of X-rays in December 2010; (2) Ortiz's unlawful performance of X-rays in early 2012; (3) the issue of Medical Director statutory non-compliance by Drs. Alonso and Genao in June and July of 2014; and (4) B & A's lack of a good-faith effort to collect co-payments and deductibles from its patients in September, 2014. Accordingly, the delayed discovery doctrine defers the accrual of State Farm's claims in this case, as all of the knowledge gained by State Farm regarding Defendants' unlawful conduct occurred at a point of time within the limitations period.

The undisputed record evidence is equally clear that through each submitted bill claiming that the services Defendants' rendered were lawful and not fraudulent, Defendants, including Dr. Alonso, lulled State Farm into inaction. Specifically, State Farm continually relied upon the representation that B & A was operating under a lawful license obtained from Florida's AHCA.

In order to obtain this license, B & A and its designated Medical Director were required to represent that B & A employed a legally compliant Medical Director who provided daily oversight of the clinic and that the Medical Director undertook the expressly enumerated statutory duties of Section 400.9935.

However, the record evidence shows that B & A's license was obtained through false and misleading statements on the clinic application submitted to AHCA. As this Court has previously recognized in an analogous situation, "[l]icenses obtained in violation of a licensing statute or otherwise procured by fraud or deception have been found to be void *ab initio*." *State Farm Mut. Auto. Ins. Co. v. Med. Serv. Ctr. of Florida, Inc*., No. 14-CV-20625-KMM, 2015 WL 2170396, at *7 (S.D. Fla. May 8, 2015). Defendants' false representations caused State Farm to continue to make payments to Defendants for which they were not entitled. Although the record supports an inference of "active deception" by Defendants, this is not necessary to support a finding in favor of State Farm on the issue of equitable tolling. *See Perera v. Wachovia Bank, N.A.*, No. 09-23773-CV-LENARD, 2010 WL 1375635, at *4 (S.D. Fla. Mar. 15, 2010). Therefore, equitable circumstances exist that warrant preserving State Farm's cause of action by tolling the relevant statute of limitations.

Accordingly, viewing the facts in the light most favorable to State Farm as the non-moving party, the Court finds no basis for granting summary judgment in Dr. Alonso's favor.

## V.   CONCLUSION

For the foregoing reasons, it is hereby ORDERED AND ADJUDGED that Plaintiffs' Motion for Summary Judgment (ECF No. 123) is GRANTED. It is further ORDERED AND ADJUDGED that Defendant Alex Alonso, M.D.'s Motion for Summary Judgment (ECF No. 128) is DENIED.

Accordingly, it is hereby ORDERED AND ADJUDGED that:

1.      Plaintiff State Farm Mutual is awarded a judgment against Defendants B & A and Dr. Genao, jointly and severally, in the amount of $316,315.63;

2.      Plaintiff State Farm Fire is awarded a judgment against Defendants B & A and Dr. Genao, jointly and severally, in the amount of $178,866.72;

3.      Plaintiff State Farm Mutual is awarded a judgment against Defendant B & A in the amount of $811,254.59;

4.      Plaintiff State Farm Fire is awarded a judgment against Defendant B & A in the amount of $172,411.46;

5.      Plaintiff State Farm Fire is awarded a judgment against Defendant Alvarez in the amount of $43,290.73;

6.      Plaintiff State Farm Fire is awarded a judgment against Defendant B & A in the amount of $28,210.58.

7.      It is further ORDERED AND ADJUDGED that Plaintiff is not obligated to pay to $697,970.00 to Defendants for services regarding Plaintiff's insureds which remain outstanding and unpaid.

The Clerk of Court is directed to CLOSE this case. All pending motions are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this 16th day of November, 2015.

_____
K. MICHAEL MOORE
CHIEF UNITED STATES DISTRICT JUDGE

cc:     All counsel of record